UNITED STATES v. LOUISVILLE & N. R. CO.

(District Court, W. D. Kentucky. December 4, 1908.)

1. INDICTMENT AND INFORMATION (§ 70*)—STATEMENT OF OFFENSE.

As nothing in a criminal case can be charged by implication, intendment, or recital, every fact necessary to be proven to constitute the crime must be directly and affirmatively alleged.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 192; Dec. Dig. § 70.*]

2. ANIMALS (§ 31*)—RESTRICTIONS ON TRANSPORTATION—"MADE"—"PROMULGATED."

Act Cong. March 3, 1905, c. 1496, § 3, 33 Stat. 1265 (U. S. Comp. St. Supp. 1907, p. 926), requires the Secretary of Agriculture to "make" and "promulgate" rules and regulations governing the method and manner of inspection, delivery, and shipment of cattle from a quarantined state or a quarantined portion of a state into any other state, and that he shall give notice of such rules and regulations as provided by the act, section 1 of which requires publication of notice of quarantine in such newspapers in the quarantined state as the Secretary may select, and the giving of notice to the proper officers of railroad, steamboat, or other transportation companies doing business in or through any quarantined state. Held, that the words "make" and "promulgate" were not synonymous; that the duty to "make" rules and regulations was sufficiently accomplished by writing them and signing them officially, but that to "promulgate" them required the giving notice thereof to the officers of transportation companies, etc., and their publication in the selected newspapers within the affected district.

[Ed. Note.—For other cases, see Animals, Dec. Dig. § 31.*

For other definitions, see Words and Phrases, vol. 5, pp. 4292–4294, vol. 6, p. 5684.]

3. STATUTES (§ 241*)—CONSTRUCTION—PENAL STATUTES.

Criminal and penal statutes must be construed with reasonable strictness.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 322, 323; Dec. Dig. § 241.*]

4. ANIMALS (§ 36*)—CONTAGIOUS DISEASES—OFFENSES—INDICTMENT.

Act Cong. March 3, 1905, c. 1496, 33 Stat. 1264 (U. S. Comp. St. Supp. 1907, p. 925), authorizes the Secretary of Agriculture to establish cattle quarantines, and section 3 makes it the Secretary's duty to make and promulgate rules and regulations permitting and governing the shipment of cattle from a quarantined district. Section 4 makes it unlawful to move any cattle or other live stock from any quarantined district into any other state except in accordance with such regulations. Held, that an indictment against a carrier for moving cattle from a quarantined district, contrary to and in violation of the Secretary's rules and regulations, failing to directly allege facts showing the promulgation of such rules, or otherwise than that the rules and regulations were "duly and legally made and promulgated," was insufficient.

[Ed. Note.—For other cases, see Animals, Dec. Dig. § 36.*]

5. INDICTMENT AND INFORMATION (§ 147*)—DUPLICITY—REMEDY.

Semble, that an objection that an indictment is duplicitous should be made by a motion to elect, and not by demurrer.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 493; Dec. Dig. § 147.*]

George Du Relle, Dist. Atty.

Helm & Helm and Benj. D. Warfield, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

EVANS, District Judge.   The indictment charges:

"That on the seventh day of September, in the year of our Lord nineteen hundred and seven, in the district aforesaid, and within the jurisdiction of this court, the Louisville and Nashville Railroad Company, a corporation created by and under the laws of the state of Kentucky, and a railroad company, did transport in Louisville and Nashville car number 18,771 a great many, to wit, twenty-two cattle from the town of Lawrenceburg, Lawrence county, in the state of Tennessee, to Louisville, in the state of Kentucky, which said town of Lawrenceburg was then and there situate in a portion of the state of Tennessee which was then and there duly and legally quarantined by the Secretary of Agriculture of the United States for splenetic, Southern or Texas fever in cattle, and which said city of Louisville was in a portion of said state of Kentucky which was not then and there quarantined by said Secretary of Agriculture for splenetic, Southern or Texas fever in cattle, and said Louisville and Nashville Railroad Company did transport said cattle from said quarantined portion of Tennessee into said city of Louisville, Kentucky, in a manner and under conditions other than those prescribed by said Secretary of Agriculture, and contrary to and in violation of the rules and regulations made and promulgated by said Secretary of Agriculture, and particularly in violation of and contrary to the rules and regulations made and promulgated by said Secretary of Agriculture governing the affixing of placards bearing the words 'Southern Cattle' to both sides of all cars carrying interstate shipments of cattle from quarantined areas into areas not quarantined, which said rules and regulations were duly and legally made and promulgated by said Secretary of Agriculture on the twenty-second day of March, 1907, and which became and were effective on and after April 15, 1907, and contrary to and in violation of rule I, revision II, to prevent the spread of splenetic fever in cattle, made and promulgated by said Secretary of Agriculture on March 30, 1907, and which became effective on and after April 15, 1907.

"And the grand jurors aforesaid, upon their oaths aforesaid do further present:

"That no placard, not less than five and a half by eight inches in size, on which was printed with permanent black ink and in bold face letters not less than one and a half inches in height, in the words 'Southern Cattle,' was by the proper officers of said Louisville and Nashville Railroad Company securely or at all affixed or maintained to both or either side of said car carrying said interstate shipment of cattle, and that the waybill of said shipment of cattle did not have the words 'Southern Cattle' plainly written or stamped upon its face.

"Against the peace and dignity of the United States and contrary to the form of the statute in such case made and provided."

The accused has demurred thereto upon the ground that the indictment does not sufficiently charge a public offense, and, furthermore, that it is subject to the objection of duplicity as attempting to charge two separate offenses in a single count. The indictment is based upon Act March 3, 1905, c. 1496, 33 Stat. 1264 (U. S. Comp. St. Supp. 1907, p. 925), entitled "An act to enable the Secretary of Agriculture to establish and maintain quarantine districts; to permit and regulate the movement of cattle and other live stock therefrom and for other purposes." Omitting all language not applicable to this case, the act is as follows:

Section 1. That the Secretary of Agriculture is authorized and directed to quarantine any state or portion thereof when he shall determine the fact that cattle or other live stock therein are affected by any contagious, infectious or communicable disease, and he is directed to give notice of the establishment of quarantine to the proper officers of railroad, steamboat or other transportation companies doing business in or through any quarantined

state, and to publish in such newspapers in the quarantined state as he may select, notice of the establishment of quarantine.

Sec. 2. That no railroad company shall receive for transportation or transport from any quarantined state or quarantined portion of any state, any cattle or other live stock, into any other state except as hereinafter provided.

Sec. 3. That it shall be the duty of the Secretary of Agriculture, and he is hereby authorized and directed, when the public safety will permit, to make and promulgate rules and regulations which shall permit and govern the method and manner of inspection, delivery, and shipment of cattle and other live stock from a quarantined state or a quarantined portion of a state into any other state, and he shall give notice of such rules and regulations in the manner provided in section 2 (sic. evidently meaning section 1) of the act, for notice of establishment of quarantine.

Sec. 4. That cattle or other live stock may be removed from a quarantined state under and in compliance with the rules and regulations of the Secretary of Agriculture made and promulgated in pursuance of the provisions of section 3 of this act, but it shall be unlawful to move any cattle or other live stock from any quarantined state or quarantined portion of any state into any other state in manner or method or under conditions other than those prescribed by the Secretary of Agriculture.

Sec. 6. That any person, company or corporation violating the provisions of sections 2 and 4 of this act shall be guilty of a misdemeanor.

It is contended in support of the demurrer that Congress did not, by the act, constitutionally delegate to the Secretary of Agriculture the power to make rules and regulations, disobedience of which should become a criminal offense. The act authorizes the Secretary to determine the particular fact upon the existence of which his power to quarantine a state or a portion of a state depends, to wit, the question whether cattle or other live stock therein are affected with a contagious, infectious, or communicable disease. It also authorizes him to make and promulgate rules and regulations for the inspection and shipment of cattle and other live stock from a quarantined state or quarantined portion of a state into any other state, so as to permit the moving of cattle which are not diseased, and prevent the shipment of such as are. Although it is hard at times to distinguish between the rules applicable to different cases, we see no reason to doubt, notwithstanding the decisions in United States v. Eaton, 144 U. S. 687, 12 Sup. Ct. 764, 36 L. Ed. 591, and Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267, that the following authorities upholding similar statutes must control this case, to wit, Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; and Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415. However, we do not find it necessary to definitely pass upon the question, because we have concluded that the indictment is insufficient upon other and much narrower grounds.

In United States v. Post (D. C.) 113 Fed. 854, Judge Locke very accurately said:

"The well-established principle of criminal pleading, which requires direct, positive, and affirmative allegations of every point necessary to be proven, is too well established to require extended consideration. Nothing in a criminal case can be charged by implication, intendment, or recital, but every fact necessary to constitute the crime must be directly and affirmatively alleged."

These propositions are supported by United States v. Hess, 124 U. S. 486, 8 Sup. Ct. 571, 31 L. Ed. 516; Ball v. United States, 140 U. S. 135, 11 Sup. Ct. 761, 35 L. Ed. 377; Evans v. United States, 153 U. S. 587, 14 Sup. Ct. 934, 28 L. Ed. 830; Batchelor v. United States, 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478; Ledbetter v. United States, 170 U. S. 610, 18 Sup. Ct. 774, 42 L. Ed. 1162; Shaw v. United States (Circuit Court of Appeals, 6th Circuit, decided Nov. 5, 1908), 165 Fed. 174. The obvious reason for this rule is that the accused is entitled to have stated in the indictment fully and precisely all the elements of the offense charged against him, in order that he may know what he is to meet by testimony, and whether the facts charged constitute a crime, and, if so, that the judgment in the case may afford a bar to any further prosecution for the same offense. Applying the general principle to this case, we must hold that the accused is entitled to a statement of the facts showing that the rules and regulations have not only been "made," but that they have been "promulgated" in the manner required by the act, for, if not so made and promulgated, the defendant was not bound by them, and disobedience to them before they were legally promulgated could not be a criminal offense. The indictment manifestly is not based upon the mere fact that cattle were transported from the quarantined district in the state of Tennessee into the state of Kentucky, but upon that fact plus the other facts that this was done without putting upon each side of the car used in the transaction the necessary placard containing the words "Southern Cattle" in letters of the size prescribed by the regulations, and without stamping or writing in plain letters the same words on the face of the waybill. The offenses really charged are violations of the rules and regulations which the indictment avers were "duly and legally" made and promulgated by the Secretary of Agriculture on March 22, 1907. While the regulations need not be set out in hæc verba in the indictment, facts should be stated upon which a judgment of the court may be based as to the sufficiency of the allegation that they were "duly and legally" made and promulgated, for it may be that in this connection the indictment states only a legal conclusion. True, if the regulations were duly and legally made and promulgated, the court would take judicial notice of their contents and provisions Caha v. United States, 152 U. S. 221, 222, 14 Sup. Ct. 513, 38 L. Ed. 415, and cases cited. But does that rule require the courts to take judicial notice that the rules and regulations were duly and legally made and promulgated, when, as here, a particular mode at least of "promulgating" them is prescribed by the act? As the word "make" and the word "promulgate" are both used in the act, we must infer that they were not tautologically employed, but that each was intended to have a separate and distinct meaning in order to give effect to the purpose of Congress. Merely to "make" the rules and regulations is not sufficient under the act. To put them effectively in force they must also be "promulgated," in this respect differing from an act of Congress, which becomes effective when it is enacted, whether promulgated or not; promulgation not being a condition precedent to the taking effect of legislation. To "make" rules

and regulations would appear to be sufficiently accomplished by writing them and signing them officially, but to "promulgate" them under this act would seem to require something more, and we think that what that something more is, is clearly indicated by the provisions of section 3, which require that the Secretary of Agriculture shall "give notice of such rules and regulations in the manner provided in section 1" (as we have construed it) "for notice of establishment of quarantine," namely, by notifying "the proper officers of railroads doing business in or through any quarantined state, and by publishing such rules and regulations in such newspapers in the quarantined state as he may select." This notice and this publication would, we think, be a "promulgation" of the rules and regulations, and we think they cannot under the act become effective so as to be the basis of criminal prosecutions until they are thus publicly made known—that is to say, "promulgated." We think that a party criminally charged with disregarding or violating the rules and regulations which the act empowers the Secretary of Agriculture to make is entitled to have the indictment aver the facts constituting such promulgation before he can be called upon to plead to it. To entitle the government to show the facts at the trial, as indubitably it must if a plea of not guilty is entered, the indictment must contain express allegations in respect thereto, or otherwise a basis for their admissibility as testimony will be lacking, inasmuch as allegation and proof must correspond as well in criminal as in civil proceedings.

The requirements of the act as to the promulgation of any rules and regulations made under its provisions are so express and explicit that promulgation by the proper executive officer is an essential prerequisite to their being put in force against the people as parts of the laws of the country, any violation of which may be punished as a crime. The idea has not become obsolete that the laws, whether strictly statutory enactments or binding rules and regulations by which we are to be governed, must not be written so high upon the walls, or otherwise so secretly made, that those bound to obey them cannot ascertain what they are. Congress, therefore, must have had a just and wise object in view in requiring "promulgation" (that is to say, publication in the way it prescribed) of rules and regulations in the premises. While railroad companies are bound to take notice of the act of Congress itself, they are not chargeable with notice of the rules and regulations thereby authorized, nor is obedience to them obligatory or possible, until they are in fact "made" and in fact "promulgated" in the manner required by law. Congress intended that the persons affected should have an opportunity to know of the rules and regulations, and promulgation was required for that purpose.

It is elementary that criminal and penal statutes must be construed with reasonable strictness. No rule is better established. Logically, and we think necessarily, upon equally strong reasons a similar rule should be applied to the interpretation and to the manner of exercising authority given to executive officers under legislation like that now before us, so far, at least, as such officers are given power to increase the list of crimes and penal offenses. Their acts under such legislation, whereby certain things not previously so are made crim-

inal or penal, have a sort of quasi legislative flavor, and we have concluded that any addition by the executive department of the government to the catalogue of things which constitute criminal offenses should derive its vitality and force from a strict and exact compliance with the authority given by the legislative department for making such addition. Otherwise new crimes might be created by mere executive action alone, and not at all by legislation.

It results that we must hold that the indictment is faulty, because it does not aver in detail the facts showing a legal promulgation of the rules and regulations alleged to have been made by the Secretary of Agriculture.

It is also insisted that the indictment is bad for duplicity in that it charges two offenses, to wit: First, that placards containing the words "Southern Cattle" were not placed on each side of the car during the transportation; and, second, that the waybill did not have those words plainly written or stamped on its face. It would seem to be obvious that these omissions were separate and distinct violations of the regulations which require each of those things to be separately done; but while the general rule that duplicity vitiates an indictment is recognized by the lower courts, we have not found that the rule has received much favor, if any, in the Supreme Court. The way that court treats the objection is illustrated by Connors v. United States, 158 U. S. 411, 15 Sup. Ct. 951, 39 L. Ed. 1033; In re Lane, 135 U. S. 448, 10 Sup. Ct. 760, 34 L. Ed. 219; Crain v. United States, 162 U. S. 634, 16 Sup. Ct. 952, 40 L. Ed. 1097; and Wiborg v. United States, 163 U. S. 648, 16 Sup. Ct. 1127, 41 L. Ed. 289. These cases seem to indicate the view of the Supreme Court to be that the fault of duplicity should be reached by a motion to elect, or in some of the other ways suggested by those opinions rather than by a demurrer.

In view of these considerations, and because of the technical strictness usually required in such matters by the rulings of the Circuit Court of Appeals of this circuit, we conclude that the demurrer must be, and it is, sustained. The indictment will be quashed, and the matter again submitted to the grand jury, if the District Attorney shall so desire.