## Louisville & Nashville Railroad Company v. Murphy.

(Decided November 19, 1918.)

### Appeal from Laurel Circuit Court.

1. Carriers—Livestock—Failure to Deliver—Quarantine Order as Defense—Pleading.—Where, as a defense to an action for damages for failure to deliver an interstate shipment of cattle, the carrier relies upon a federal quarantine established by the Secretary of Agriculture, pursuant to the Act of March 3, 1905, c. 1496, 33 Stat. 1264 (U. S. Comp. St. Supp. 1907, p. 925) it must allege facts showing that notice of the establishment of the quarantine was published in newspapers in the quarantined states selected by the Secretary of Agriculture, as provided by section one of said act.

2. Carriers—Notice of Claim.—A provision in a contract for an interstate shipment requiring the shipper, as a condition precedent to his right to recover damages for loss or injury to livestock, to give written notice of his claim thereof, to the agent of the railroad company or other carrier from whom he received his stock, before the stock are removed from the place of destination or from the place of delivery of same to the shipper, does not apply to a case where the carrier abandoned its contract and over the protest of the shipper returned the stock to him at the place of consignment, and a failure to give such notice was not fatal to the shipper's right to recover.

3. Carriers—Breach of Contract—Damages.—Where a carrier receives an interstate shipment of cattle and after transporting them a portion of the distance returns them to the shipper, the shipper is entitled to recover the freight charges paid for transporting the cattle, because no service was performed for him.

4. Carriers—Breach of Contract—Damages.—For a breach of a contract for an interstate shipment of cattle, the shipper may recover the expenses incurred in feeding and caring for the cattle while in carrier's possession, and in preparing to receive the cattle at their destination and to transport them to his farm.

5. Carriers—Breach of Contract—Damages—Special Damages—Instructions.—Where a shipper has purchased cattle for the purpose

of transporting them to his farm in another state, where he has abundant pasturage to feed them, and informs the agent of the carrier of this fact, he may, for a breach of the contract to carry cattle, recover the difference between the necessary and reasonable expense which he incurred in feeding and taking care of the cattle in this state after their return to him, during the period when the carrier refused to ship the cattle because of an alleged quarantine, and the reasonable value of the pasturage on his farm, which the cattle would have consumed during the same period plus the reasonable expense of caring for the cattle during that time, and an instruction authorizing the recovery of the entire expense necessarily incurred in feeding and taking care of the cattle in this state was erroneous.

BENJAMIN D. WARFIELD, H. J. JOHNSON and GEORGE G. BROCK for appellant.

HAZELWOOD & JOHNSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages for failure to transport cattle according to contract, and for injury to the cattle while in defendant's charge, plaintiff, D. B. Murphy, recovered of the defendant, Louisville & Nashville Railroad Company, a verdict and judgment for $800.00. The defendant appeals.

About the middle of the month of February, 1915, plaintiff bought 103 head of yearling cattle in Laurel county for the purpose of taking them to his cattle range in northern Georgia, where he had abundant pasturage. Before shipping the cattle, he inquired of the defendant's freight agent and of its local agent at London whether a quarantine was in force and they informed him that there was no quarantine to prevent the shipment of the cattle from London, Ky., to Chattanooga, Tenn. Plaintiff also acquainted the local agent with the fact that he had purchased the cattle for the purpose of taking them to his cattle range in Georgia, and that they could be grazed there at small expense. The cattle were driven to London and loaded into two cars on the morning of February 23, 1915. For the shipment, the defendant issued a livestock contract which was signed by its local agent and the plaintiff, and by which it agreed to transport the two cars to Chattanooga, Tenn. About 2:30 p. m. on the same day the cattle started on their journey and about 2 o'clock the next morning reached Jellico, Tenn., the terminus of defendant's line. The

Southern Railway Company, the connecting carrier over whose line the cattle were to be transported from Jellico to Chattanooga, Tenn., refused to receive and transport the cattle because of alleged federal quarantine regulations. Plaintiff was then apprised of this fact and, though protesting against the non-delivery of the cattle, it was agreed between him and the defendant that the cattle should be returned to London, Ky. Plaintiff's evidence showed that the cattle were in good condition when delivered to defendant, but that when returned to him many of them were bruised and in a bad condition, and several died.

The defendant attempted to justify the violation of the contract on the ground that there had been established in Kentucky a federal quarantine, which made it unlawful for it to transport the cattle into the state of Tennessee, and complaint is made of the action of the trial court in sustaining a demurrer to this plea. The plea is based on the alleged action of the Secretary of Agriculture, taken pursuant to an act of March 3, 1905, c. 1496, 33 Stat. 1264 (U. S. Comp. St. Supp. 1907, p. 925) entitled, "An act to enable the Secretary of Agriculture to establish and maintain quarantine districts; to permit and regulate the movement of cattle and other live stock therefrom and for other purposes." Sections 1 and 2 of the act are as follows:

"Section 1. That the Secretary of Agriculture is authorized and directed to quarantine any state or portion thereof when he shall determine the fact that cattle or other live stock therein are affected by any contagious, infectious or communicable disease, and he is directed to give notice of the establishment of quarantine to the proper officers of railroad, steamboat or other transportation companies doing business in or through any quarantined state, and to publish in such newspapers in the quarantined state as he may select, notice of the establishment of quarantine.

"Sec. 2. That no railroad company shall receive for transportation or transport from any quarantined state or quarantined portion of any state, any cattle or other live stock, into any other state, except as hereinafter provided."

The answer alleged in substance that pursuant to the above act the Secretary of Agriculture, on the 17th day

of February, 1915, and before the shipment in question, issued and promulgated an order placing the whole of the state of Kentucky under federal quarantine, and that this order prohibited the shipment of any cattle from the state of Kentucky to another state or territory during the time that said order remained in effect. It was further alleged that said order of the Secretary of Agriculture was furnished to the defendant by the Secretary of Agriculture and printed by it and distributed to its various agents; that the shipment was made after the order of the Secretary of Agriculture had been promulgated and gone into effect, and before the defendant and its agent at London had been notified of same; that its agent received notice of said order before said cattle arrived at Jellico, Tennessee; that had defendant carried said cattle out of the state of Kentucky it would have violated the quarantine order and the federal statute. Indictments charging carriers with violations of quarantine orders promulgated by the Secretary of Agriculture have been held insufficient where they failed to allege facts showing that notice of the establishment of the quarantine was published in newspapers in the quarantined states selected by the Secretary of Agriculture. United States v. Louisville & N.R. Company, 165 Fed. 936; United States v. El Paso & N. E. R. Company, 178 Fed. 846; here facts showing the proper publication were not alleged in the answer; but it is insisted that the technical rule applied in the case of indictments should not apply to a civil action, and that as defendant did allege that it had received notice of the quarantine order, that was sufficient to impose on it the duty to obey the order. Manifestly, where a carrier pleads an act of the government as an excuse for its violation of a contract, it should plead facts showing that the act of the government was coercive in character and one which it was required to obey. Rules, regulations and orders of an executive officer of the government do not have the force of a statute until they are promulgated in the manner provided by the statute. Since the statute in question provided not only for personal notice, but for notice by publication, it is clear that no quarantine could be lawfully established until both these prerequisites were complied with. Since notice by publication was a prerequisite to the establishment of the quarantine, it was

necessary to allege facts showing that notice of the establishment of the quarantine was published in the manner required by the statute. The mere allegation that notice had been given to the defendant and that the quarantine order had become effective was not sufficient, since the latter allegation was but a conclusion of law. It follows that the demurrer to that paragraph of the answer pleading the federal quarantine as an excuse for defendant's violation of the contract was properly sustained.

Just before going into trial, defendant tendered an amended answer pleading substantially the same facts respecting the federal quarantine as were alleged in its former answer, and further alleging that the quarantine was "duly published by the United States Secretary of Agriculture and the defendant, Louisville & Nashville Railroad Company, notified of said order by bulletin." This answer was not tendered until more than five months after the demurrer had been sustained to the former answer pleading the same defense, and was rejected because defendant offered no excuse for the unreasonable delay. Manifestly, the amendment should have been tendered promptly after the demurrer to the same plea had been sustained in order that plaintiff might have prepared to meet the issue. Instead of doing this, the defendant waited for five months, and until the case was about to be tried. Under these circumstances the trial court did not abuse a sound discretion in refusing to permit the amended answer to be filed. In addition to this the amendment itself was not sufficient since the allegation that the quarantine order was "duly published" was a mere legal conclusion. We may further add that even if the quarantine order had been properly pleaded, it would have been a defense only to the claim for damages resulting from the failure to deliver the stock at the point of destination, and would not have been a defense to a claim for damages for injury to the stock due to the negligent manner in which they were handled by the defendant.

Among the provisions of the contract of shipment is the following:

"As a condition precedent to the shipper's right to recover any damages for loss or injury to said animals, he will give notice in writing of his claim thereof to the agent of the railroad company or other carrier from

whom he received said animals before said animals are removed from the place of destination above mentioned, or from the place of delivery of the same to said shipper, and before said animals are mingled with other animals.''

It is the contention of the defendant that it was entitled to a peremptory instruction because the evidence showed that written notice of the claim for damages was not given until March 6th, or several days after the stock had been removed from London, where they were delivered to plaintiff. This contention is based on the fact that the above provision requiring notice applies not only to the place of destination, but to the place of delivery, wherever that may be. Whether this provision is reasonable or not, we deem it unnecessary to decide in view of our conclusion that it has no application to the facts of this case. It not infrequently happens that a shipper of live stock asks the delivery of the stock, or portion thereof, at some intermediate point between the place of consignment and the place of delivery, and doubtless the words ''or from the place of delivery of same to said shipper,'' were incorporated to meet such a contingency. Then, too, the provision was predicated on the defendant's undertaking to carry out the contract. In other words, it was intended to apply only to a case where the carrier transported the stock to the place of destination provided by the contract, or to some other place of delivery voluntarily selected by the shipper. It was never intended to apply where the carrier abandoned its contract and over the protest of the shipper returned the stock to him at the place of consignment. For this reason, we conclude that plaintiff's right of action was not lost by his failure to give written notice of the injury to the stock to the defendant before the stock were removed from London.

Complaint is made of instruction No. 4, which authorized a finding for plaintiff for the freight charges paid defendant for transporting the cattle to Jellico, Tenn., and back to London, of the expense incurred for feeding and caring for the cattle while in defendant's possession, and of the expense incurred in preparing to receive the cattle at Chattanooga and transfer them to the stock farm in Georgia. With respect to the freight charges, it is argued that defendant was required, both under the Interstate Commerce Act and the state law, to charge for

the service performed and a refusal to charge would therefore be a violation of law. The fault of this argument lies in the claim that any service was performed for plaintiff. So far as plaintiff is concerned the effect is the same as if the cattle had never been taken from London, the place of consignment. Since the transportation in question resulted in no service nor benefit to plaintiff, it necessarily follows that the charges therefor were unauthorized by law, and that instruction No. 4, authorizing the recovery of such charges was proper.

With respect to the expenses incurred in feeding and caring for the cattle while in defendant's possession, and in preparing to receive the cattle at Chattanooga and transport them to the Georgia farm, it is clear that these were items of damage which were fairly and reasonably within the contemplation of the parties when the contract of shipment was made, and that the trial court committed no error in authorizing their recovery.

Particular complaint is made of the following instruction:

"If you believe from the evidence that plaintiff's stock farm in Georgia was in condition for grazing the cattle in question without extra expense to him at the time of the purchase and delivery of said cattle for shipment and that before he purchased said cattle he informed the defendant company's local freight agent at London, Kentucky, of his desire to purchase such cattle for shipment to his farm for grazing and thereupon also inquired of said local agent and then of the defendant company's general freight agent, and was informed by them that there was no quarantine to prevent the shipment of such cattle from London, Kentucky, to Chattanooga, Tennessee, and that he then purchased the cattle in question and delivered the same to the defendant company for shipment without any knowledge or notice of any quarantine law against such shipment, and shall further believe from the evidence that the defendant company agreed to and undertook to ship and deliver said cattle to him at Chattanooga, Tennessee, then you will find for the plaintiff such additional sum as you may believe from the evidence he was necessarily caused to expend for feeding and caring for said cattle after their return to him, up to the time he did ship same to his stock farm and the measure of recovery on this claim, if you

find for the plaintiff, is a fair market value of the necessary expense incurred in doing so, but if you find for the plaintiff upon this claim, you will not exceed the sum of $567.02, that being the amount claimed in the petition, but unless you shall so believe from the evidence, as set out in this instruction, then you will find for the defendant upon this claim.''

This instruction is based on the fact that after the return of the cattle to plaintiff, the company refused for several weeks to carry them to Chattanoga, Tenn., on the ground that there was a quarantine in force. It is suggested that there should be no recovery of the above items because they were not fairly within the contemplation of the parties. While ordinarily such damages could not be recovered, it is clear from the evidence in this case, that notice of the fact that the plaintiff was supplied with abundant pasturage in Georgia and that he had purchased the cattle for the purpose of shipping them to Georgia was brought home to defendant's agent at London. Thus, the defendant was apprised of the fact that if the contract of transportation were broken, plaintiff would be subjected to an expense which he would not have had to incur if the contract were carried out. In other words, the circumstances under which such special damages would be claimed were brought home to the defendant and it cannot therefore be said that they were not such as were contemplated by the parties. However, the instruction is erroneous in the following respect: It treats the pasturage on the Georgia farm as having no value whatever and authorized a finding for plaintiff of the entire expense incurred by plaintiff in feeding and caring for the cattle while in Kentucky. Clearly, the pasturage in Georgia had some value, even though plaintiff was unable to acquire other cattle and place them on the farm. It therefore follows that the measure of plaintiff's recovery was not the entire expense which he reasonably and necessarily incurred in feeding and caring for the cattle in Kentucky, but the difference between that expense and the reasonable value of the pasturage on the Georgia farm which the cattle would have consumed during the same period, plus the reasonable expense of caring for the cattle during that time.

In view of the necessity for another trial, we deem it proper to say that no recovery should have been author-

ized for injury to the cattle caused by defendant's failure to rest, water and feed them at least once in thirty-six hours, for the reason that there was no evidence tending to show such failure.

Judgment reversed and cause remanded for new trial consistent with this opinion.