ROBNETT v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   May 10, 1909.)

No. 1,607.

1. PUBLIC LANDS (§ 38*) — APPLICATION TO PURCHASE — STONE AND TIMBER
LANDS—PERSONAL EXAMINATION.

Act Cong. June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545),
provides for the sale of stone and timber lands and section 2, declares that
the applicant shall file a written statement designating the land he desires
to purchase; setting forth that the same is unfit for cultivation and valua-
ble chiefly for timber and stone; that it is uninhabited, contains no mining
or other improvements except for ditch or canal purposes, where any such
do exist, save such as were made by or belong to the applicant, nor, as
deponent verily believes, any deposit of gold, silver, etc.; that deponent
has made no other application under the act; that he does not apply to
purchase for speculation, but in good faith to appropriate it to his own ex-
clusive use and benefit.  *Held* not to require the applicant to make his
initial statement on knowledge derived solely from personal observation,
and hence statements under the blank forms furnished by the Land De-
partment that the applicant had personally examined the land applied for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and that he knew from his own personal knowledge that it was unfit for cultivation, uninhabited, etc., were improper.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 82; Dec. Dig. § 38.*]

2. PERJURY (§ 13*) — SUBORNATION OF PERJURY — STONE AND TIMBER ENTRY— PERSONAL KNOWLEDGE OF APPLICANT.

Since Act Cong. June 3, 1878, c. 151, § 2, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), providing for applications for the purchase of stone and timber lands, does not require that applicant's initial statement shall be based on a personal examination of the lands, nor that he shall state from his personal knowledge that the land is unfit for cultivation, etc., subornation of perjury could not be based on a charge that defendant induced an applicant to purchase such lands to falsely swear in his initial application that he had personally examined the land and stated from personal knowledge that the same was unfit for cultivation.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 61½ ; Dec. Dig. § 13.*]

In Error to the District Court of the United States for the District of Idaho.

The indictment in this case was founded on the act of Congress approved June 3, 1878, c. 151, 20 Stat. 89 (U. S. Comp. St. 1901, p. 1545), entitled "An act for the sale of timber lands in the states of California, Oregon, Nevada, and in Washington Territory," as amended and extended to all the public land states by Act Aug. 4, 1892, c. 375, 27 Stat. 348 (U. S. Comp. St. 1901, p. 1547), and consisted of two counts, upon the first of which the plaintiff in error was convicted. That count charged him with willfully and corruptly suborning one George Ray Robinson to swear falsely in a certain affidavit introduced in evidence as the government's Exhibit 7, and thereby to commit perjury, before the register of the United States Land Office at Lewiston, Idaho. The affidavit is as follows:

"4–537.

"This affidavit can be made only upon the personal knowledge of applicant derived from his own personal examination of the land.

"Timber and Stone Lands—Sworn Statement.

"(To be made in Duplicate.)

"Land Office at Lewiston, Idaho,
"(Date) March 31, 1903.

"I, George Ray Robinson, of Lewiston, county of Nez Perce, state of Idaho, desiring to avail myself of the provisions of the act of Congress of June 3, 1878, entitled 'An act for the sale of timber in the states of California, Nevada and in Washington Territory,' as extended to all the public land states by act of August 4, 1892, for the purchase of the N. ½ N. W. ¼, N. ½ N. W. ¼, of section 26, township 29 N., of range 3 E. B. M., in the district of lands subject to sale at Lewiston, Idaho, I do solemnly swear that I am a native citizen of the United States, of the age of 27, and by occupation electrician; that I have personally examined said land, and from my personal knowledge state that said land is unfit for cultivation, and valuable chiefly for its timber; that it is uninhabited; that it contains no mining or other improvements, nor, as I verily believe, any valuable deposit of gold, silver, cinnabar, copper, or coal; that I have made no other application under said acts; that I do not apply to purchase the land above described on speculation, but in good faith to appropriate it to my own exclusive use and benefit, and that I have not, directly or indirectly, made any agreement or contract, or in any way or manner, with any person or persons whomsoever, by which the title I may acquire from the government of the United States may inure in whole or in part to the benefit of any person except myself, and that my postoffice is Lewiston, Idaho.

"[Signed]   George Ray Robinson.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes .

"I hereby certify that the foregoing affidavit was read to affiant in my presence before he signed his name thereto; that said affiant is to me personally known (or has been satisfactorily identified before me by ————), and that I verily believe him to be the person he represents himself to be; and that this affidavit was subscribed and sworn to before me this 31st day of March, 1903.                              [Signed]    J. B. West, Register.

"Note.—Every person swearing falsely to the foregoing affidavit is guilty of perjury and will be punished as provided by law for such offense. In addition thereto the money that may be paid for the land is forfeited, and all conveyances of the land or of any land or of any right, title or claim thereto, are absolutely null and void as against the United States."

The perjury assigned is that, in having so sworn that he had personally examined the land described in the affidavit, Robinson swore falsely.

Forney & Moore and Geo. W. Tannahill, for plaintiff in error.

Robert T. Devlin, William R. Harr, and C. H. Lingenfelter, U. S. Dist. Atty., for the United States.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). The statute upon which the indictment is founded provides that surveyed public lands of the United States not included within military, Indian, or other reservations, valuable chiefly for timber but unfit for cultivation, and which have not been offered at public sale according to law, may be sold to citizens of the United States or persons who have declared their intention to become such, in quantities not exceeding 160 acres to any one person or association of persons, at the minimum price of $2.50 per acre, and that lands valuable chiefly for stone may be sold on the same terms as timber lands; provided, that nothing in the act contained shall defeat or impair any bona fide claim under any law of the United States, or authorize the sale of any mining claim or the improvements of any bona fide settler, or lands containing gold, silver, cinnabar, copper, or coal, or lands selected by the states under any law of the United States donating lands for internal improvements, education, or other purposes, and with a further provision not necessary to be stated.

The second and third sections of the act of June 3, 1878, c. 151, 20 Stat. 89, 90 (U. S. Comp. St. 1901, pp. 1545, 1546), are as follows:

"Sec. 2. That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district a written statement in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, setting forth that the same is unfit for cultivation and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belong to the applicant, nor, as deponent verily believes, any deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation but in good faith to appropriate it to his own exclusive use and benefit, and that he has not directly or indirectly made any agreement or contract in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States, should inure in whole or in part to the benefit of any person except himself; which statement must be verified by the oath of the applicant before the register or the receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and

shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of bona fide purchasers, shall be null and void.

"Sec. 3. That upon the filing of said statement as provided in the second section of this act, the register of the land office shall post a notice of such application, embracing a description of the land by legal subdivisions, in his office, for a period of sixty days, and shall furnish the applicant a copy of the same for publication, at the expense of such applicant, in a newspaper published nearest the location of the premises, for a like period of time; and after the expiration of said sixty days, if no adverse claim shall have been filed, the person desiring to purchase shall furnish to the register of the land office satisfactory evidence, first, that said notice of the application prepared by the register as aforesaid was duly published in a newspaper as herein required; secondly, that the land is of the character contemplated in this act, unoccupied and without improvements, other than those excepted, either mining or agricultural, and that it apparently contains no valuable deposits of gold, silver, cinnabar, copper, or coal; and upon payment to the proper officer of the purchase money of said land, together with the fees of the register and the receiver, as provided for in case of mining claims in the twelfth section of the act approved May tenth, eighteen hundred and seventy-two, the applicant may be permitted to enter said tract, and, on the transmission to the General Land Office of the papers and testimony in the case, a patent shall issue thereon; provided, that any person having a valid claim to any portion of the land may object in writing to the issuance of a patent to the lands so held by him, stating the nature of his claim thereto; and evidence shall be taken, and the merits of said objection shall be determined by the officers of the land office, subject to appeal, as in other land cases. Effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office. * * * "

In the case of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, the Supreme Court decided, among other things, that an indictment under this act of Congress, for the subornation of perjury, relates to the verified statement provided for in its second section, and not to the making of the final proofs in respect to the land, and that any regulations of the Land Department undertaking to add to the requirements of the statute are invalid.

A comparison of Exhibit 7 above set out, which constitutes the alleged perjury of Robinson, and which was introduced in evidence over the objections and exceptions of the defendant, with section 2 of the act of June 3, 1878, shows that the requirement that the applicant for the land should state in his sworn statement that he had personally examined the land applied for, and further state that from his personal knowledge it was unfit for cultivation, uninhabited, and valuable chiefly for its timber, is certainly not expressly found in the statute.

The question whether an applicant for entry under this statute may make the initial statement therein provided for upon knowledge or information other than that of personal observation came before the Circuit Court of Appeals for the Seventh Circuit in the case of Hoover v. Salling, 110 Fed. 43, 49 C. C. A. 26, where that court, in holding that he may, said:

"It will be noted that the statute requires no residence upon the land by the applicant either at the time or subsequently; nor does it require him, either presently or in the future, to utilize the land, by either cutting the timber or quarrying the stone. There is in the statute no purpose nor requirement, in these respects, such as the homestead laws embody. The purpose of the act seems to have been of an entirely different character. It was based manifestly upon the possibility that much of the timber and stone on these lands would

not be needed for years to come, though, with the passage of time, their value would increase; and it was meant that the opportunities thus afforded for increased valuation should not be monopolized by a few, but should be open equally to all, so that the increment, whatever it was, might be shared widely by the people of the United States. The act was, in a sense, an attempt to widely distribute and popularize the ownership of these lands. We cannot conceive that Congress meant, in the promotion of such a purpose, to shut out citizens of the United States who lived at great distances, or were physically incapacitated to explore the woods, or citizens who, for any reason, could not personally inspect the lands. The invitation was to all, wheresoever they resided, and whatsoever their means of acquiring information, who could comply with the procedure laid down by the statute. This procedure embraced, first, a statement, verified by oath, of the character of the lands, the right of the applicant to enter, and the purpose of his proposed entry; and then, after notice, a hearing either ex parte or upon contest—but in either event a hearing—at which, and before allowance of the application, the statement must be supported by satisfactory proof. It is clear to us, in view of this, that the statement is meant simply as an initial paper—the claim or pleading—upon which the machinery of the land office is to be set in motion. The statement is not accepted as proof, and it does not perform the office of proof; that must come at the hearing. It is in the nature of a petition to the Land Department, setting forth all the material facts upon which action is invoked, and is, in this general respect, analogous to verified petitions, or bills, in courts of chancery."

It is, of course, true that the Land Department cannot by any rule or regulation declare what shall constitute a crime, or make that a crime which by statute is not such. The subornation of perjury charged in the indictment in question relates to the statement of the applicant in respect to his personal examination of the land and his personal knowledge of the matters specified in the statute. Such statement in regard to his personal examination and personal knowledge was required only by the blank forms furnished by the Land Department. It was not even required by the rules and regulations adopted by that department, as will be seen from the circular from the General Land Office set out in the margin of the opinion of the Supreme Court in the Williamson Case, at page 19.

We are therefore of opinion that under the ruling of the Supreme Court in the case of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, neither the personal examination of the land applied for by Robinson, nor his personal knowledge concerning it, was required, and hence that the indictment charges no crime against the plaintiff in error.

Accordingly the judgment is reversed, and the cause remanded with directions to the court below to dismiss the indictment.