## UNITED STATES v. NELSON.

### (District Court, D. Idaho, N. D.   September 5, 1912.)

1. PERJURY (§ 2*)—REPEAL—REVISION.

    Act Cong. March 3, 1857, c. 116, § 5, 11 Stat. 250, provides that in all cases where an affidavit shall be made or taken before any register or receiver of any local land office in the United States, or any territory thereof, and shall be filed in the local or general land office, and in cases arising under any or either of the orders, regulations, or instructions of the Land Department in any wise affecting the right, claim, or title to any public lands of the United States, if any person shall knowingly testify falsely, he shall be deemed to have committed perjury. *Held* that, such section having been partially incorporated into the Revised Statutes of the United States in section 5392 (U. S. Comp. St. 1901, p. 3653), it was within the provisions for repeal embodied in section 5596 (U. S. Comp. St. 1901, p. 3750).

    [Ed. Note.—For other cases, see Perjury, Cent. Dig. § 2; Dec. Dig. § 2.*]

2. PERJURY (§ 25*)—INDICTMENT—MATERIALITY OF FALSE STATEMENT.

    Materiality of an alleged false statement on which an indictment for perjury is based may be charged in the indictment, either by setting out the facts from which the materiality appears as a matter of law, or by a direct averment that the matter so falsely stated was material, either of which will render the indictment good on· demurrer, unless it affirmatively ·appears, as a matter of law, from the facts otherwise charged that the false statement was immaterial.

    [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 82–89; Dec. Dig. § 25.*]

3. PERJURY (§ 25*)—INDICTMENT—PUBLIC LANDS.

    Act Cong. June 11, 1906, c. 3074, 34 Stat. 233 (U. S. Comp. St. Supp. 1911, p. 640) authorizes the opening of agricultural lands in any forest reserve, and provides that any settler actually occupying and in good faith claiming such lands for agricultural purposes, prior to January 1, 1906, who shall not have abandoned the same, if qualified to make a homestead entry, on whose application the land proposed to be entered was examined and listed shall have a preference right of settlement and entry.. *Held* that, where an indictment charged that defendant sought to enter. such land, and for that purpose filed a false affidavit that he had established his residence upon and commenced cultivation and improvement of the land about October 6, 1902, with the intent to claim the same under the homestead laws, and had ever since continuously resided thereon in good faith, the indictment was not defective as showing on its face that the statements falsely made were immaterial.

    [Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 82–89; Dec. Dig. § 25.*]

4. PERJURY (§ 9*)—FOREST RESERVE LANDS—AGRICULTURAL ENTRY—AFFIDAVIT.

    Act Cong. June 11, 1906, c. 3074, 34 Stat. 233 (U. S. Comp. St. Supp. 1911, p. 640) provided for the entry of agricultural lands within forest reserves in accordance with the general homestead laws "and that act," conferring on the occupant a preference right to entry·over other qualified applicants on certain conditions. Rev. St. § 2478 (U. S. Comp. St. 1901, p. 1586) provides that the Commissioner of the General Land Office, under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of the title relating to the surveying and sale of the public lands of the United States not otherwise es-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pecially provided for. General Land Office Circular No. 10, approved by the Secretary of the Interior April 20, 1911, par. 17, prescribes the sworn showing to be made by homestead applicants in all cases under the general homestead laws; and paragraph 19 provides that all applications by persons claiming as settlers must, in addition to the facts required in that paragraph, state the date and describe the acts of settlement under which they claim a preferred right of entry, etc. *Held,* that such regulation was within the authorization of section 2478: and hence an affidavit of settlement, made by an applicant to enter agricultural lands within a forest reserve, was one taken in a case in which a law of the United States authorizes an oath to be administered as provided by Rev. St. § 5392 (U. S. Comp. St. 1901, p. 3653), and was therefore a proper subject for prosecution for perjury.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. §§ 27–35; Dec. Dig. § 9.*]

William D. Nelson was indicted for making a false affidavit of residence with reference to an application to enter certain forest reserve lands. On demurrer to the indictment. Overruled.

C. H. Lingenfelter, U. S. Atty.

McFarland & McFarland and Fred Miller, for defendant.

DIETRICH, District Judge. By an act entitled "An act to provide for the entry of agricultural lands within forest reserves," etc., approved June 11, 1906, c. 3074, 34 Stat. 233 (U. S. Comp. St. Supp. 1911, p. 640), it is provided that the Secretary of Agriculture may request the Secretary of the Interior to open for entry, under the act and the general homestead laws, specifically described lands in any forest reserve, found upon examination by the Secretary of Agriculture to be chiefly valuable for agricultural purposes, if such lands can be occupied for such purposes without injury to the forest reserve. It is made the duty of the Secretary of the Interior, upon receiving such a request, to declare the lands "open to homestead settlement and entry in tracts not exceeding one hundred and sixty acres." He is further directed to file a list of such lands in the local office, and to give public notice of the date when they will become subject to settlement and entry. It is further provided:

"That any settler actually occupying and in good faith claiming such lands for agricultural purposes prior to January first, nineteen hundred and six, and who shall not have abandoned the same, and the person, if qualified to make a homestead entry, upon whose application the land proposed to be entered was examined and listed, shall, each in the order named, have a preference right of settlement and entry."

From the indictment it appears that on the 24th day of July, 1911, the defendant made application at the proper local land office to enter 160 acres of land situate within the boundaries of the Cœur d'Alene national forest, in Idaho, as the same had theretofore, upon November 6, 1906, been established by proclamation of the President of the United States. It is averred that in connection with the defendant's application it became and was material for the officers of the local land office to be informed at what time, if at all, prior to such application the defendant established his residence upon the

land applied for, and whether or not his residence thereon had been continuous and in good faith; and, apparently to meet the demand for such information, the defendant made and filed with his application an affidavit, sworn to before the receiver of the land office, in which he stated that he established his residence upon, and commenced the cultivation and improvement of, the land on or about August 6, 1902, with the intent to claim the same under the homestead laws, and that ever since said date his cultivation, improvement, and residence had been continuous, and that, in good faith, he had at all times complied with the homestead laws. It is further charged that the affidavit was in all substantial particulars false, and that in truth the defendant never had occupied the land as a home, or cultivated or improved the same.

The defendant demurs to the indictment, upon the ground that it does not state facts sufficient to constitute a public offense, the particular point being that the affidavit was not required or authorized by law, and that, assuming the statements contained therein to be willfully false, they relate to immaterial matters, and therefore cannot serve as the basis of a charge of perjury. There are two counts in the indictment, the first of which, according to the statement of the District Attorney, is intended to charge the offense under section 5392 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3653), and the second under section 5 of an act entitled "An act in addition to an act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," approved March 3, 1857, c. 116, 11 Stat. 250, which, it is contended, is still in force.

[1] First. Is section 5 of the act of 1857 in force? The section is as follows:

"In all cases where any oath, affirmation, or affidavit shall be made or taken before any register or receiver or either or both of them of any local land office in the United States or any territory thereof, or where any oath, affirmation, or affidavit, shall be made or taken before any person authorized by the laws of any state or territory of the United States to administer oaths or affirmations, or take affidavits, and such oaths, affirmations, or affidavits are made, used, or filed in any of said local land offices, or in the General Land Office, as well in cases arising under any or either of the orders, regulations, or instructions, concerning any of the public lands of the United States, issued by the Commissioner of the General Land Office, or other proper officer of the government of the United States, as under the laws of the United States, in any wise relating to or affecting any right, claim, or title, or any contest therefor, to any of the public lands of the United States, and any person or persons shall, taking such oath, affirmation or affidavit, knowingly, willfully, or corruptly swear or affirm falsely, the same shall be deemed and taken to be perjury, and the person or persons guilty thereof shall, upon conviction, be liable to the punishment prescribed for that offense by the laws of the United States."

Except in so far, if at all, as it is covered by section 5392, the section was not carried forward into the Revised Statutes; and admittedly, if repealed, such repeal was wholly the result of the adoption of the Revised Statutes, and especially of the sections thereof numbered 5392, 5595, and 5596, which are as follows, respectively:

"Sec. 5392. Every person who, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States

authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, and shall be punished by a fine of not more than two thousand dollars, and by imprisonment, at hard labor, not more than five years; and shall, moreover, thereafter be incapable of giving testimony in any court of the United States until such time as the judgment against him is reversed." (U. S. Comp. St. 1901, p. 3653.)

"Sec. 5595. The foregoing seventy-three titles embrace the statutes of the United States general and permanent in their nature, in force on the 1st day of December one thousand eight hundred and seventy-three, as revised and consolidated by commissioners appointed under an act of Congress, and the same shall be designated and cited, as the Revised Statutes of the United States." (U. S. Comp. St. 1901, p. 3750.)

"Sec. 5596. All acts of Congress passed prior to said first day of December one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof; all parts of such acts not contained in such revision, having been repealed or superseded by subsequent acts, or not being general and permanent in their nature: Provided, that the incorporation into said revision of any general and permanent provision, taken from an act making appropriations, or from an act containing other provisions of a private, local, or temporary character, shall not repeal, or in any way affect any appropriation, or any provision of a private, local or temporary character, contained in any of said acts, but the same shall remain in force; and all acts of Congress passed prior to said last-named day no part of which are embraced in said revision, shall not be affected or changed by its enactment." (U. S. Comp. St. 1901, p. 3750.)

Under a fair construction of these last two sections, it should, I think, be held that they did not repeal any act of a general and permanent nature, no part of which is embraced in the revision. Section 5595, standing alone, would operate to repeal all prior statutes, and would make the revision the sole and exclusive evidence of existing law. But section 5596 was doubtless added for the purpose, among others, of rescuing from repeal general provisions of law wholly overlooked or inadvertently omitted by the commissioners. But it must be borne in mind that the precaution manifested in the latter section is against oversight alone, and if, as is picturesquely stated in one of the briefs, "the compilers left their footprints upon an act, that portion not carried into the revision is repealed." Furthermore, as was said by the Supreme Court, in Dwight v. Merritt, 140 U. S. 213, 11 Sup. Ct. 768, 35 L. Ed. 450:

"The Revised Statutes are not a mere compilation and consolidation of the laws of Congress in force on the 1st of December, 1873. The object of that revision was to simplify and bring together all statutes and parts of statutes which, from similarity of subject, ought to be brought together, to expunge redundant and obsolete enactments, and to make such alterations as might be necessary to reconcile contradictions and amend imperfections in the original text of the pre-existing statutes. All those statutes were abrogated by section 5596, which provides that 'all acts of Congress passed prior to said first day of December, one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof.'"

Undoubtedly the act of 1857 is a law of a permanent nature, and particularly section 5 thereof is to be so considered. If now we give to the term "acts," the second word in section 5596, its ordinary im-

port, and accordingly hold that the act of 1857 is a single "act," and not that it consists of five acts, because it is subdivided into five sections, then undoubtedly section 5 is a part of an act of a general and permanent nature, a "portion of which is embraced" in the revision; for admittedly sections 1, 2, and 3 thereof are incorporated into the Revised Statutes as sections 5341, 5342, and 5343, respectively, and therefore section 5 is brought within the scope of the repealing provision. It is, however, urged by a course of reasoning not entirely convincing that section 5 is of itself to be deemed to be a complete act, within the purview of section 5596. Peters v. United States, 2 Okl. 116, 33 Pac. 1031. Assuming, but not deciding, that the position is tenable, I am still inclined to think that the result is the same; for section 5 is, at least in part, embraced in section 5392, and is therefore superseded by it. The courts have divided upon the main question; but, in view of what I have deemed to be a controlling consideration, it is not thought necessary to enter into an elaborate analysis of the reasons advanced in support of the conflicting views. Favoring the contention that the section is still in force, there is little to be added to the forceful discussion found in Peters v. United States, supra, and the opposing view is persuasively presented by District Judge Toulmin, in United States v. Bedgood (D. C.) 49 Fed. 54. So far as I am aware, in no other case has the question been expressly decided. In Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415, the Supreme Court declined to pass upon it. In United States v. Wood, 70 Fed. 485 (District of Oregon, 1895), no question seems to have been raised, and Judge Bellinger assumed that the section was still in force. In United States v. Shinn, 14 Fed. 447 (District of Oregon, 1882), Judge Deady apparently proceeded upon the same assumption. Babcock v. United States, 34 Fed. 873, decided by Brewer, Circuit Judge, in the Colorado district, in 1888, in a measure tends to support the Government's position. At least an indictment, some counts in which were based upon section 5, was sustained; but there the contention was, not that section 5 was repealed, but that its enactment operated to repeal section 5392 of the Revised Statutes. Apparently the court's attention was not called to sections 5595 and 5596, R. S., and their effect upon section 5 was not considered. In Fisher v. United States, 1 Okl. 252, 31 Pac. 195, the view is suggested which is later amplified and confirmed by the same court in the Peters Case, already referred to. No other decision even remotely involving the question has been brought to my attention, or has come under my observation.

The weakness of the argument in support of the proposition that the section is still in force lies in the assumption of premises which, it is thought, are unwarranted in fact. It is not controverted that Congress desired that there be incorporated into the revision all existing laws of a general and permanent nature, and adopted the Revised Statutes under the belief that all such laws were embraced therein. That is made entirely clear by section 5595. If, therefore, any such law was improperly omitted therefrom, such omission must be accounted for by the presumption of inadvertence or oversight on the part of the commissioners by whom the revision was prepared.

Appreciating the strain of the theory that the commissioners could have overlooked so important and conspicuous a section in a short act covering little more than a page of printed matter, all other sections of which they considered and carried forward, those who contend against the repeal assume that section 5392 of the Revised Statutes was in existence in 1857, and, upon such assumption, argue that, upon the other hand, it is incredible that the commissioners would have deliberately omitted from the revision, as being unimportant, a section which Congress had deemed to be necessary, and had seen fit to enact in addition to, and to supplement, section 5392. And if it were true that section 5392 in its present form was in existence in 1857, the argument would have great force; for it would seem to be presumptuous for the commissioners deliberately to set aside or ignore what would thus, by implication, clearly appear to be the intent of Congress. It is sometimes loosely stated that section 5392 dates from the Crimes Act of 1790; but in fact it did not become a law in 1790, and was not in existence in 1857, but is a new section formulated by the commissioners for the purpose of covering and superseding all existing statutes, both special and general, inclusive of section 5 of the act of 1857, and became a law for the first time upon the adoption of the Revised Statutes. Section 18 of the act of April 30, 1790, c. 9, 1 Stat. 116, to which, doubtless, reference is made, is as follows:

"That if any person shall willfully and corruptly commit perjury, or shall by any means procure any person to commit corrupt and willful perjury, on his or her oath or affirmation in any suit, controversy, matter or cause depending in any of the courts of the United States, or in any deposition taken pursuant to the laws of the United States, every person so offending," etc.

—shall be punished as therein provided. It will be noted that not only in form, but in substance, this provision is materially different from section 5392. It is true that by an act of March 3, 1825, c. 65, 4 Stat. 115, entitled "An act more effectually to provide for the punishment of certain crimes," etc., the act of 1790 is, in a measure, supplemented or amplified. Section 13 thereof, which relates to the crime of perjury, provides that:

"If any person, in any case, matter, hearing, or other proceeding, when an oath or affirmation shall be required to be taken or administered under or by any law or laws of the United States, shall, upon the taking of such oath or affirmation, knowingly and willingly swear or affirm falsely, every person, so offending, shall be deemed guilty of perjury," etc.

While it may be conceded that this section, which appears to have been the general law upon the subject of perjury at the time of the passage of the act of 1857, somewhat enlarges the scope of section 18 of the act of 1790, it is far from being identical with section 5392 of the Revised Statutes. Upon the face of the statutes themselves, therefore, it is reasonable to conclude that section 5392 in its present form was drafted and adopted with the understanding and intent that it did and should cover all cases embraced within section 18 of the act of 1790, and section 13 of the act of 1825, and section 5 of the act of 1857; and upon a reference to the commissioners' Draft of the revision, as presented to Congress for adoption, I find confirma-

tory evidence thought to be conclusive of the correctness of this view. Certain it is that section 5 was not omitted through any oversight or inadvertence. At pages 2582 and 2583 of volume 2 of the Draft is found, first, a section covering perjury, which is doubtless a modified form of section 13 of the act of 1825, with marginal references to the act of 1790 and the act of 1825. Following this is another section covering subornation of perjury. And then follows what is denominated a "List of Statutes on Perjury and False Swearing," under which head there are cited 20 different sections or acts passed at different dates, among them being the act of March 3, 1857. Following this list of statutes is what is called a "note," which I quote in full:

"The crime of perjury and false swearing occupies a conspicuous place in the laws of the United States, as the foregoing list of acts abundantly shows. The list might be doubled. The legislative practice is to affix the pains and penalties of perjury anew every time an oath is required in any statute, to be taken before either a judicial or administrative officer. It would be well if this growing mass of laws in regard to perjury were no further enlarged. To this end the cited sections of the acts of 1790 and 1825 are so revised and slightly altered as to embrace, it is believed, every case of false swearing, whether in a court of justice or before any administrative officer of the government. For fear, however, that sections 73 and 74 may not be broad enough to cover every perjury and subornation of perjury, it is recommended that the two following sections, in brackets and italicized, be adopted in lieu thereof. We feel much confidence that no case can occur which these provisions will not reach."

Following the note, in brackets, are two sections, one numbered 78, covering perjury, and one numbered 79, covering subornation of perjury. Bracketed section 78 is identical in language with section 5392, and section 79 is identical with section 5393, of the Revised Statutes. Obviously the only inference which can be drawn is that Congress adopted the recommendation of the commissioners and incorporated section 5392 in the Revised Statutes, with the understanding that it did and would supersede and take the place of the numerous existing statutes defining perjury and false swearing; and it is accordingly held that section 5 of the act of 1857 was repealed by sections 5595 and 5596 of the Revised Statutes.

Second. Are the facts charged in the indictment sufficient to constitute an offense under section 5392? It is not questioned that if the averments of the indictment are true the defendant, in making the affidavit, took the oath before a competent officer; and that he willfully, and contrary to such oath, stated or subscribed to matters which were false, and which he did not believe to be true. It is denied only (1) that the false statements were upon "material" matters, and (2) that the proceeding was a "case in which a law of the United States authorizes an oath to be administered."

[2] As to the first objection, it is to be said that there are in common use two methods of alleging the materiality of a false statement constituting the basis of a perjury charge, either one of which is deemed to be sufficient. The pleader may either set out the facts from which the materiality appears, as a matter of law, or he may directly aver the materiality without setting forth the probative or

circumstantial facts. The latter method is here adopted, and, upon demurrer, the indictment must be held sufficient, unless it conclusively appears, as a matter of law, from the facts therein set forth that the affidavit was immaterial. Bishop on Criminal Procedure (3d Ed.) vol. 2, § 921; 16 Enc. of Pl. & Pr. pp. 343, 344.

[3] I am unable to yield to the defendant's contention that the inquiry to which the affidavit relates was, as a matter of law, immaterial. It is entirely within the range of possibilities, for instance, that, simultaneously with the application of the defendant, there was tendered to the land office an application by John Doe, a qualified homesteader, for the same tract of land. In such a case it would seem to be material for the officers to know which of the two applicants was in the actual occupancy of the land, in order properly to decide which application they should accept, and to that end they might require a showing to be made by affidavit. It is wholly unimportant that at most such an affidavit is held to establish only a prima facie case in favor of the affiant, which the opposing applicant may later assail in an adversary proceeding; for it still remains true that the defendant's right to enter the land at all, as against such other claimant, may depend entirely upon the existence of the facts set forth in such affidavit, and the making of the affidavit, with the consequent acceptance of the application, takes from him and casts upon another the burden of instituting a formal proceeding for the final adjudication of the conflicting claims. Upon this branch of the case, it is concluded that, while the affidavit may have related to immaterial matters, such immateriality does not conclusively appear, either from the facts averred, or by reason of any presumption of law.

[4] Assuming now, as alleged, that the affidavit was material, we proceed to consider whether or not the defendant's oath taken thereto was "in a case in which a law of the United States authorizes an oath to be administered." Preliminarily it is to be noted that no statute expressly provides for such an affidavit, or directly, in terms, authorizes the oath; and if authority existed at all it must have been conferred indirectly and by implication only. Was it so conferred? The theory of the defendant, as I understand it, is that Congress, having, in section 2290 of the Revised Statutes (U. S. Comp. St. 1901, p. 1389), required the homestead applicant to make an affidavit, the contents of which are expressly prescribed, it is not competent for the administrative officers, by rule or otherwise, to exact additional requirements, at least any additional statements required by the land officers to be made under oath, even though false, cannot serve as the basis of a charge of perjury; reference being had to the general principle that a criminal offense cannot be created or defined by a mere administrative rule. United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591. But from this principle it does not necessarily follow that a departmental regulation may not, in any case, provide the opportunity for, or in some other way sustain, a vital relation to the commission of a crime. United States v. Bailey, 9 Pet. 238, 9 L. Ed. 113; Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed.

415; United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563. Nor is it essential to the offense of perjury that the oath falsely taken should be particularly pointed out or directly prescribed by express statute. It is sufficient if, indirectly or by necessary implication, the laws of the United States require or permit the oath to be taken. Caha v. United States, supra; United States v. Curtis, 107 U. S. 671, 2 Sup. Ct. 501, 27 L. Ed. 534; United States v. Hearing (C. C.) 26 Fed. 744; United States v. Hardison (D. C.) 135 Fed. 419. It may be conceded that there is some support, both in reason and the decided cases, for the view that, in the administration of the general homestead law, Congress having, by section 2290, specifically prescribed the contents of the required affidavit, it is incompetent for the Land Department to impose upon the applicant additional conditions. "Expressio unius est exclusio alterius." United States v. Maid (D. C.) 116 Fed. 650. That point, however, it is unnecessary presently to decide; for it must be borne in mind that the application under consideration was not made under the general homestead laws alone. The lands were within the boundaries of a national forest, and by express provision of the act of June 11, 1906, authorizing their entry, they could be entered only in accordance with the general homestead laws *and that act.* That act conferred upon the defendant, if otherwise qualified, a preference right to make entry over other qualified applicants, provided certain facts and conditions existed. To enable the officers properly to administer the law and accept the application of the person entitled to make the entry, it was requisite that they inform themselves concerning the existence of such facts. No method of inquiry or form of procedure is pointed out by the law. The method most familiar, most convenient, and most commonly adopted for making a prima facie showing of a fact in the administration of the public land laws is, as Congress must have well known, by affidavit or verified written statement. Such a method is entirely reasonable, and imposes upon the applicant no undue burden. Furthermore, in the Revised Statutes we find the following sections:

"Sec. 441. The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: * * * Second. The public lands, including mines." (U. S. Comp. St. 1901, p. 253.)

"Sec. 453. The Commissioner of the General Land Office shall perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all [*agents*] [grants] of land under the authority of the government." (U. S. Comp. St. 1901, p. 257.)

"Sec. 2478. The Commissioner of the General Land Office, under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this title not otherwise specially provided for." (U. S. Comp. St. 1901, p. 1586.)

"Sec. 2246. The register or receiver is authorized, and it shall be their duty, to administer any oath required by law or the instructions of the General Land Office, in connection with the entry or purchase of any tract of the public lands." (U. S. Comp. St. 1901, p. 1371.)

In circular No. 10 of the General Land Office, issued by the Commissioner, and approved by the Secretary of the Interior, April 20, 1911, paragraph 17 prescribes the sworn showing to be made by homestead applicants in all cases under the general homestead laws; and paragraph 19 provides that:

"All applications by persons claiming as settlers must, in addition to the facts required in paragraph 17, state the date and describe the acts of settlement under which they claim a preferred right of entry," etc.

This appears to be an "appropriate regulation," and therefore fully within the authority conferred by section 2478, empowering the officers charged with the responsibility of disposing of the public lands "to enforce and carry into execution, by appropriate regulations," provisions of law "not otherwise specially provided for." No valid reason is apparent, therefore, why the oath to the affidavit made by the defendant pursuant to this regulation should not be held to be an oath which, by necessary implication, is permitted by the laws of the United States to be administered.

The case seems to fall within the principle of Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415, and United States v. Hearing (C. C.) 26 Fed. 744. In the former case the defendant was charged with having given false testimony in a contest in the land office involving the validity of a homestead entry. While it was held that if Congress had not authorized, it had at least recognized, the validity of such a contest, it is not suggested that there was any express authorization of the administration of oaths in such proceedings. The whole matter of procedure, including the taking of evidence and the administration of oaths, rested solely upon the rules and regulations of the Department; and it seems to have been assumed that if the Land Department was authorized to make an investigation by entertaining a "contest" it was authorized to administer oaths to persons appearing to testify in such contest. Accordingly the judgment of conviction was affirmed.

In United States v. Hearing there was no express authority of law for requiring the affidavit which served as the basis of the perjury charge, and which had been taken in a land matter and filed in the land office. The comments of Judge Bellinger, in overruling a demurrer to the indictment, are very pertinent. He said:

"It is not directly contended that the existence of these facts was not material to the right of the defendant to make his proof of qualification and purpose, before the clerk, to make an entry under the homestead act, but only that, however material they may have been in that connection, the statute did not require or authorize the defendant to make an oath to them. The oath of the applicant to the affidavit or the excusatory facts is not compulsory. But whoever wishes to have the benefit of the homestead act must show in some way the existence of the facts which entitle him thereto; and these, when not of record, being within the applicant's knowledge, may be shown by his own oath. As to the facts showing the qualifications of the applicant and his purpose in making the entry, the statute expressly permits and requires them to be proven by his oath; and if there were no specific direction in the statute on the subject I think he would be allowed to do so as a matter of course. And this is the condition of the statute in regard to

these excusatory facts. The mode of their proof is not prescribed; and convenience, usage, and necessity all point to the oath of the party as the proper evidence of their existence. Certainly it would be within the power of the Department to make a regulation on the subject permitting or prescribing this mode of proof in such a case. * * * The statute, not having prescribed the mode of proving the excusatory or preliminary facts, a regulation of the Department might direct or permit that it be done by some such recognized mode of procedure as the oath of the applicant, and thereupon such oath, when taken, is administered, in effect, under or in pursuance of a law of the United States; and therefore perjury may be assigned thereon."

The affidavit here is not like that involved in the case of Williamson v. United States, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, or Robnett v. United States, 169 Fed. 778, 95 C. C. A. 244, where the sworn statements required by the regulations of the Department were in contravention of the legal rights of the entryman, or were at least immaterial to such rights. In the Robnett Case the Williamson Case is followed, and the precise point decided in the latter case appears from the statement of the proposition made by Mr. Justice White, who rendered the decision, as follows:

"It remains only to consider whether it was within the power of the Commissioner of the General Land Office to enact rules and regulations by which an entryman would be compelled to do that at the final hearing which the act of Congress must be considered as having expressly excluded, in order thereby to deprive the entryman of a right which the act, by necessary implication, conferred upon him. To state the question is to answer it."

Obviously such a principle is not applicable here, if our conclusion is correct that the inquiry to which the defendant's affidavit related was a material one.

Counsel for the government have not pointed out what they conceive to be the material distinction between the two counts, and I have failed to discover it. Both counts appear to be sufficient under section 5392, and the demurrer to each will therefore be overruled. There is some discussion found in one of the briefs upon the question whether or not the prosecution should be compelled to elect as between the two counts; but such question has not been submitted, and need not now be decided.

The demurrer will be overruled and the defendant required to plead further.