[Crim. No. 4051. In Bank.—January 15, 1937.]

THE PEOPLE, Appellant, v. ZINIE ZIADY, Respondent.

U. S. Webb, Attorney-General, Frank Richards, Deputy Attorney-General, Buron Fitts, District Attorney, and A. H. Van Cott, Deputy District Attorney, for Appellant.

Samuel Schwartz and P. Talbot Hannigan for Respondent.

CURTIS, J.—This is an appeal from a judgment dismissing the information after an order sustaining the defendant's demurrer thereto.

The offense charged was perjury based upon an alleged false affidavit executed and presented to the department of charities, bureau of county welfare, of the county of Los Angeles in connection with and in support of defendant's application for aid from said county. It is alleged in the information that the affidavit which is the basis of the perjury charge was required by an ordinance of the county of Los Angeles. It is conceded that there is no statute or other authority which directly required the presentation of such an affidavit by a person applying for aid from said county. By section 118 of the Penal Code perjury is defined as follows: "Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury." It is, and has been from the inception of this action in the superior court, the contention of respondent that the affidavit made by her and delivered by her to said department and bureau in support of her application for aid was not made "in any of the cases in which such an oath may by law be administered" within the meaning of said section 118 of the Penal Code.

This contention of the respondent presents two propositions which may be stated in the following terms:

First: The affidavit made by respondent was not required nor authorized by law.

Second: Conceding that the board of supervisors of Los Angeles had the power and authority to require applicants for aid from said county to make and present such an affidavit, a false and untrue statement therein by the applicant would not constitute perjury as defined by the Penal Code of this state.

We will first direct our attention to the power of the board of supervisors of said county to enact the ordinance providing for the affidavit which the respondent made and

presented to the department of charities in support of her application for aid. Those parts of said affidavit material to our purpose in this action are as follows: "I Zinie Ziady, being first duly sworn, depose and say that I am the same person who is making this application . . . I do not own property; . . . that I am without funds . . . and that the facts therein stated are true of my own knowledge."

It is made the duty of every county in the state to care for and aid all indigent persons resident of the county whether such persons be able-bodied or incapacitated by reason of age or disease. (Stats. 1933, p. 2005, sec. 1.) Section 6 of this statute provides as follows: "Section 6. Rules for granting support. The board of supervisors of any county or city and county may establish its own policies with reference to the amount of property, if any, a person shall be permitted to have while receiving public assistance, to the end that in so far as it is possible an applicant for public relief shall be required to apply his own property to his support." Section 11 of the same statute makes it the duty of the board of supervisors of every county and of every city and county as a whole, or by committee, or by such person or society as it may authorize, "to investigate every application for relief from the funds of such county".

Besides these provisions of said statute, the charter of the county of Los Angeles makes it the duty of the board of supervisors "To provide, publish and enforce a complete code of rules, not inconsistent with the general laws, or this charter, prescribing in detail the duties and the systems of office and institutional management, accounts and reports for each of the offices, institutions, and departments of the county." (Sec. 11 [6], Charter of the County of Los Angeles.)

Acting under the authority given it by said provision of the charter, the board of supervisors of said county enacted an ordinance (Ordinance No. 2168 (N. S.), effective November 30, 1932), which provided, among other things, the following rule: "Rule 6 [d]. Before any aid, except emergency aid not exceeding twenty dollars in amount, shall be given to or for any person claimed to be a pauper or poor or indigent person, such person shall make a verified written statement of the nature, location, and value of all property in which said person has any interest." This ordinance was in full force and effect at the time of the enactment of the 1933

statute, and the board of supervisors of said county continued to function thereunder in carrying out the mandate of said statute requiring each county of the state to care for and aid the indigent residents therein.

While there is nothing in the statute or in the charter of said county which specifically authorizes the board of supervisors to require an applicant for aid to make a verified statement of the nature, location, and value of the applicant's property, yet the duty imposed upon the counties respecting the care of its indigent residents is imposed by statute, and the statute expressly gives to the board of supervisors the right to establish its own policies with reference to the amount of property a person shall be permitted to have while receiving public assistance. To enable the board to determine this question, it is necessary for it to have information as to the nature and value of the property of an applicant for aid, and also as to its location. To require the applicant to furnish this information is surely not an unusual nor an unreasonable requirement. The applicant is, undoubtedly, the one person best prepared to furnish such information. As to the manner in which this information is to be furnished, the board of supervisors provided that it should be done by the affidavit of said applicant. This requirement cannot be said to be either unusual or unreasonable. On the other hand, it is the mode and manner most commonly adopted for proving facts in the first instance, or in making out a *prima facie* case. In this connection, the following language used by Judge Dietrich in the case of *United States* v. *Nelson,* 199 Fed. 464, 472, seems most apropos: "The lands were within the boundaries of a national forest, and by express provision of the act of June 11, 1906, authorizing their entry, they could be entered only in accordance with the general homestead laws and that act. That act conferred upon the defendant, if otherwise qualified, a preference right to make entry over other qualified applicants, provided certain facts and conditions existed. To enable the officers properly to administer the law and accept the application of the person entitled to make the entry, it was requisite that they inform themselves concerning the existence of such facts. No method of inquiry or form of procedure is pointed out by the law. The method most familiar, most convenient, and most commonly adopted

for making a *prima facie* showing of a fact in the administration of the public land laws is, as congress must have well known, by affidavit or verified written statement. Such a method is entirely reasonable and imposes upon the applicant no undue burden.''

In that action the defendant was indicted for making a false affidavit of residence with reference to an application to enter certain forest reserve lands. A demurrer was interposed to the indictment, and the language quoted above was from the opinion of the court overruling the demurrer and requiring the defendant to plead to the indictment. We think the same reasons that moved the court to sustain the indictment in that case are present in the action now before us. While no express statutory authority was given to the general land office to require a sworn statement by the applicant of facts showing his preferential right to enter the land applied for, yet it was the duty of the officials of the land department to ascertain these facts before passing upon his application. Accordingly, the court held that the requirement of the sworn statement of the applicant was an appropriate regulation and a proper method of inquiry for the purpose of establishing this necessary information. So in the present case, the board of supervisors of the county was empowered to establish its own policy as to the amount of property an applicant for relief might possess while receiving county aid, and in exercising this authority it acted under rule 6 (d) of Ordinance Number 2168 (N. S.) effective November 30, 1932, which required that, before county aid would be given to any person, he should make a sworn statement as to the property owned by him. We think this was a reasonable and appropriate regulation, and in view of the provisions of the statutes heretofore referred to and the section of the county charter of the county of Los Angeles quoted above, that the board of supervisors of said county was authorized to require said sworn statement as provided by said rule 6 (d) of said ordinance.

We now pass to the consideration of the question as to whether a felony prosecution for perjury may be predicated upon a false statement in an affidavit when the only requirement for such an affidavit is by virtue of the pro-

visions of an ordinance of the board of supervisors of a county.

The question appears to be one of first impression in so far as the appellate courts of this state are concerned, but we find that the federal courts have given extensive consideration to questions substantially similar to that which we are called upon to consider in the present case. The federal statute defining the crime of perjury is practically the same as that of our own state upon that subject. ''Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which the law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly . . . shall wilfully and contrary to such oath state or subscribe any material matter which he does not believe to be true, is guilty of perjury.'' (Sec. 5392, Rev. Stats. U. S. Code, tit. 18, sec. 231; Crim. Code, sec. 125.)

We have before referred to the case of *United States* v. *Nelson*, 199 Fed. 464. In that case, as we have seen, the affidavit upon which the felony charge of perjury was predicated was not authorized by any federal statute, or by any statute at all, but by a regulation contained in a circular of the general land office, issued by the commissioner and approved by the secretary of the interior. Referring to this regulation the court in its opinion sustaining the information against the defendant said (p. 473), ''This appears to be an 'appropriate regulation', and therefore fully within the authority conferred by section 2478, empowering the officers charged with responsibility of disposing of the public lands 'to enforce and carry into execution, by appropriate regulations', provisions of law 'not otherwise specially provided for'. No valid reason is apparent, therefore, why the oath to the affidavit made by the defendant pursuant to this regulation should not be held to be an oath which, by necessary implication, is permitted by the laws of the United States to be administered.''

The Nelson case cites as authority supporting its ruling the case of *Caha* v. *United States*, 152 U. S. 211 [14 Sup. Ct. 513, 38 L. Ed. 415]. In this last-mentioned case the defendant was found guilty of perjury in making a false statement before the land office in which one Thomas Burch contested defendant's homestead entry. It was the conten-

tion of the defendant that no such contest was provided for by any statute of the United States. It did appear, however, that the land department had authority to prescribe appropriate regulations for the disposition of public lands, and that said department had prescribed rules and regulations for contests in all cases of the disposition of public lands, which, of course, would apply to homestead entries. The court, after reviewing the statutes upon the subject and the rules and regulations of the land department, concluded as follows: ''We have, therefore, a general grant of authority to the Land Department to prescribe appropriate regulations for the disposition of the public land; a specific act of Congress authorizing rules and regulations prescribed by the Land Department for contests in all cases of the disposition of public lands, including both preemption and homestead entries; and the frequent recognition by acts of Congress of such contests in respect to homestead entries. Clearly then, within the scope of Section 5392, the local land officers in hearing and deciding upon a contest with respect to a homestead entry constituted a competent tribunal, and the contest so pending before them was a case in which the laws of the United States authorized an oath to be administered.''

We quote the following from the case of *United States* v. *Smull*, 236 U. S. 405, 408 [35 Sup. Ct. 349, 59 L. Ed. 641]: ''This is an indictment for perjury. It is charged that Luther Jerome Smull, the defendant in error, in making application for a homestead entry under Section 2289 of the Revised Statutes swore falsely, before the receiver of the land office, that he had not, theretofore 'made any entry under the homestead laws', whereas in fact, as he well knew, he had previously made a homestead entry upon which he had obtained patent. The defendant demurred upon the ground that the indictment did not state a crime. The District Court sustained the demurrer, ruling that the affidavit was not within the statute defining perjury. Criminal Code, Section 125. The Government brings the case here under the Criminal Appeals Act. . . . It cannot be doubted that a charge of perjury may be based upon Section 125 of the Criminal Code where the affidavit is required either expressly by an act of Congress or by an authorized regulation of the General Land Office, and is known by the affiant to be

false in a material statement. That is, the Land Department has authority to make regulations which are not inconsistent with law and are appropriate to the performance of its duties (Revised Statutes, Sections 161, 441, 453, 2478), and when by a valid regulation the Department requires that an affidavit shall be made before an officer otherwise competent, that officer is authorized to administer the oath within the meaning of Section 126. The false swearing is made a crime, not by the Department, but by Congress; the statute, not the Department fixes the penalty. *United States* v. *Grimaud*, 220 U. S. 522 [31 Sup. Ct. 480, 55 L. Ed. 563]. . . . The judgment of the District Court is reversed and the case is remanded for further proceedings in conformity with this opinion.''

The case of *United States* v. *Smull, supra,* is cited with approval by the court in the case of *United States* v. *Morehead,* 243 U. S. 607, 614 [37 Sup. Ct. 458, 462, 61 L. Ed. 926], where the district court had sustained a demurrer to an indictment charging the defendants with subornation of perjury in connection with soldiers' declaratory statements, to be filed by defendant as agent, covering public lands under the Homestead Law. The affidavit was required by a regulation of the land department, and not by any. statute. The Supreme Court in holding that an indictment based upon an affidavit required by such a regulation charged a crime under the laws of the United States made the following statement of the law: ''Ever since the decision in *United States* v. *Bailey,* 9 Pet. 238, 255 [9 L. Ed. 113, 120], it has been held that an oath administered by a state magistrate, in pursuance of a valid regulation of one of the departments of the Federal Government, though without express authority from Congress, subjects the affiant to the penalties of the federal statute against false swearing. See *Caha* v. *United States,* 152 U. S. 211, 218 [14 Sup. Ct. 513, 38 L. Ed. 415, 417].'' To the same effect is *United States* v. *Birdsall,* 233 U. S. 223 [34 Sup. Ct. 512, 58 L. Ed. 930].

The only case which is claimed to be in conflict with the authorities just cited is the case of *United States* v. *George,* 228 U. S. 14 [33 Sup. Ct. 412, 57 L. Ed. 712]. But an examination of the particular facts in that case readily discloses that it may be differentiated from those above referred to. In the George case the defendant was charged with

the crime of perjury in falsely answering certain questions in making final proof of his homestead entry. These questions were required to be answered by a regulation of the department of the interior. Section 2291 of the Revised Statutes specified just what facts must be proven and by whom proven in making such final proof. The applicant, the statute requires, must prove by two credible witnesses residence and cultivation of the land for five years, and by his own affidavit that no part of said land had been alienated by him, and that he "will bear true allegiance to the Government of the United States". The regulation of the department of the interior required the claimant "to testify, as a witness in his own behalf in the same manner". In commenting on this regulation, the court said: "It was testimony exacted in pursuance of this regulation and in the manner directed by it which constitutes the charge of the indictment. It will be observed, therefore, that the claimant was required to testify as other witnesses. In other words, three witnesses were required. Section 2291 requires two only and, as we have said, points out what proof, in addition, the claimant himself shall give. It is manifest that the regulation adds a requirement which that section does not." The gist of the decision in that case is that the regulation requiring the claimant to make affidavit as to facts which the statute required to be proven by other witnesses was inconsistent with the terms of the statute and was, therefore, a regulation not within the power of the department to make. It differs, therefore, from those regulations which have been held valid in the decisions cited above, and which the courts held were valid regulations of the department, as for instance, the regulation considered by the court in the case of *United States* v. *Morehead, supra,* where the court distinguished it from the invalid regulation in the George case in the following language (p. 616) : "The regulation calling for an affidavit to a soldier's declaratory statement under the Homestead Law, unlike that considered in *United States* v. *George,* 228 U. S. 14 [33 Sup. Ct. 412, 57 L. Ed. 712], is thus a regulation entirely consistent with the statutory provisions; and being also appropriate, is valid."

Applying the principles of law announced in the authorities above cited to the facts in the present action, we think, it must be held that a regulation or rule of the board of

158

supervisors, which, under the statutes of this state and the charter of the county of Los Angeles, the board was clothed with power to adopt, is a law of this state within the meaning of section 118 of the Penal Code defining the crime of perjury, and that a false statement in an affidavit required by said rule or regulation renders the person making said affidavit guilty of the crime of perjury.

There are other minor exceptions taken to the sufficiency of the information against defendant, but, in our opinion, they are so inconsequential as not to require any extended discussion. The ordinance was sufficiently described and pleaded in the information.

The contention that the legislature has exclusive power to create felonies, and that the false swearing in this case was made a crime by the ordinance of the board of supervisors cannot be sustained. "The false swearing is made a crime, not by the Department, but by Congress; the statute, not the Department, fixes the penalty. *United States* v. *Grimaud*, 220 U. S. 506, p. 522 [31 Sup. Ct. 480, 55 L. Ed. 563]." (*United States* v. *Smull, supra,* p. 409.)

For the reasons stated herein, the judgment is reversed with directions to the trial court to overrule the demurrer.

Thompson, J., Shenk, J., Edmonds, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.