# CAHA *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 1001. Argued January 15, 16, 1894. — Decided March 5, 1894.

The District Court of the United States in the District of Kansas had jurisdiction over a prosecution for the crime of perjury, in violation of the

provisions of Rev. Stat. § 5392, committed in what is now the Territory of Oklahoma before the passage of the act creating that territory, although the indictment was not found until after the passage of that act.

Within the scope of Rev. Stat. § 5392, local land officers, in hearing and deciding upon a contest in respect of a homestead entry, constitute a competent tribunal, and the contest so pending before them is a case in which the laws of the United States authorize an oath to be administered.

False swearing in a land contest before a local land office, in respect of a homestead entry, is perjury within the scope of Rev. Stat. § 5392.

The courts of the United States take judicial notice of rules and regulations prescribed by the Department of the Interior, in respect of contests before the Land Office.

Wherever, by the express language of any act of Congress, power is entrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice.

THE case is stated in the opinion.

*Mr. Fred. Beall* and *Mr. L. Michener* for plaintiff in error. *Mr. Henry E. Asp, Mr. John W. Shartel, Mr. George Gardner,* and *Mr. W. W. Dudley* were on briefs for same.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

This case comes on error from the District Court of the United States for the District of Kansas. On March 31, 1893, plaintiff in error, having been found guilty of the crime of perjury by the verdict of a jury, was sentenced to confinement in the Kansas state penitentiary for a term of two years, and to pay a fine of ten dollars.

The questions are these: The indictment was returned September 22, 1892. It in two counts charged the defendant with the crime of perjury committed on January 3, 1890, in the land office at Kingfisher, Oklahoma, in falsely testifying

that he was on a sand bar in the South Canadian River at 12 o'clock noon on the 22d of April, 1889; that this false testimony was given in a contest then pending in the land office, in which one Thomas Burch contested defendant's homestead entry on the ground that he had violated the act of Congress of March 2, 1889, and the President's proclamation, by entering upon and occupying the lands opened to settlement under such proclamation prior to 12 o'clock noon of the day named therein, to wit, April 22, 1889.

The two counts are similar, the only material difference being that in the first count the oath is charged to have been administered by J. V. Admire, the receiver of the land office, and in the second by J. C. Roberts, the register of the land office, each being, as averred, authorized to administer the oath by the laws of the United States and the regulations of the land office. To this indictment a demurrer was presented; which, after argument, was overruled, and the first matter for consideration is this ruling. The grounds of the demurrer, still insisted upon, are, first, that the court had no jurisdiction over the alleged offence; and, secondly, that the indictment stated no public offence.

As to the first of these grounds: it is not disputed that the District Court of Kansas had, at the time of the commission of the alleged offence, jurisdiction generally of offences against the criminal laws of the United States committed in the country known as Oklahoma, the place where this offence is charged to have been committed; but on the 2d of May, 1890, Congress passed an act creating the Territory of Oklahoma, 26 Stat. c. 182, p. 81. In section 9 is found this provision :

"Each of the said District Courts shall have and exercise, exclusive of any courts heretofore established, the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States. . . . All acts and parts of acts heretofore enacted, conferring jurisdiction upon United States courts held beyond and outside of the limits of the Territory of Oklahoma as herein defined, as to

all causes of action or offences in said territory, and in that portion of the Cherokee Outlet hereinbefore referred to, are hereby repealed, and such jurisdiction is hereby given to the Supreme and District Courts in said Territory; but all actions commenced in such courts, and crimes committed in said Territory and in the Cherokee Outlet, prior to the passage of this act, shall be tried and prosecuted, and proceeded with until finally disposed of, in the courts now having jurisdiction thereof, as if this act had not been passed."

The contention is that by this section jurisdiction was given to the District Courts of Oklahoma, the indictment not having been found until September, 1892, and the reservation of jurisdiction to the Kansas court being limited to the cases in which prosecutions had already been commenced. We do not so understand the provision. The general grant of jurisdiction to the Oklahoma courts is prospective in its operation. Such is the ordinary rule of construction, and the repeal of the act vesting jurisdiction in the Kansas court is limited by a proviso which includes not only "actions commenced," but "crimes committed." Counsel lay stress upon the words "having jurisdiction thereof," and argue that courts have no jurisdiction of crimes, but only of actions for the punishment of crimes. But this is placing too much stress upon a subordinate part of the sentence. If the scope of the sentence be as thus contended for, the words "crimes committed" are superfluous, and it would have been sufficient to have said "all actions commenced in such courts prior to the passage of this act," etc. For the word "actions" may include both civil and criminal proceedings. But Congress went further, and provided not only that all "actions commenced in such courts," but also that all "crimes committed in said Territory" prior to the passage of the act should be "tried, prosecuted, and proceeded with until finally disposed of." Grammatically, "crimes committed in said Territory" is an independent nominative, and refers to matters different from those embraced within the term "actions commenced in such courts." It is fair, under such cases, in order to determine the meaning, to omit the one nominative and read the sentence as though the other only

were present, and so it will read "all crimes committed in said Territory prior to the passage of this act shall be tried, prosecuted, and proceeded with until finally disposed of in the courts now having jurisdiction thereof, as if this act had not been passed." So reading, the meaning cannot be doubtful. Whatever of jurisdiction the District Court of Kansas had at the time of the alleged offence remained unaffected by the act of May 2, 1890.

Neither can it be doubted that the District Court of Kansas had jurisdiction over a prosecution for the crime of perjury committed at the place named in violation of the provisions of Rev. Stat. § 5392. That section, and under it this indictment was found, reads as follows:

"Every person who, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury," etc.

This statute is one of universal application within the territorial limits of the United States, and is not limited to those portions which are within the exclusive jurisdiction of the national government, such as the District of Columbia. Generally speaking, within any State of this Union the preservation of the peace and the protection of person and property are the functions of the state government, and are no part of the primary duty, at least, of the nation. The laws of Congress in respect to those matters do not extend into the territorial limits of the States, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government. It was in reference to such body of laws that § 2145, Rev. Stat. was enacted, and the argument which is sought to be drawn by the counsel therefrom against the jurisdiction of the District Court of Kansas has no foundation. It is enough that § 5392 has uniform application throughout the territorial limits of the

United States; that by § 563 the District Courts are given jurisdiction generally "of all crimes 'and offences cognizable under the authority of the United States committed within their respective districts;" and that by the act of January 6, 1883, c. 13, § 2, 22 Stat. 400, the territory in question was annexed to and made a part of the United States judicial district of Kansas.

Neither is it necessary to consider whether § 5 of the act of March 3, 1857, c. 116, 11 Stat. 250, remained in force after the revision of 1873. The first three sections of that chapter were reënacted in the Revised Statutes; the fifth was omitted, and there is some discussion in the briefs as to whether, under §§ 5595 and 5596 Rev. Stat., said § 5 still remains in force. But, as we said, it is unnecessary to enter into such a discussion. The indictment was returned under § 5392, and its sufficiency is to be determined by the provisions of that section.

Do the facts stated in this indictment constitute an offence under that section? It will be remembered that the perjury is charged to have been committed in a contest in the land office in respect to the validity of a homestead entry, the oath having been administered by one or other of the land officers before whom the contest was carried on. And the contention is that the statute makes no provision for such a contest before those officers; that, as the statute does not authorize any such contest, it cannot be said that the oath was taken in a "case in which a law of the United States authorizes an oath to be administered." If such a contest before the local land officers is not in terms provided for, it is certainly recognized in the statutes. Section 2273, Rev. Stat. is as follows:

"When two or more persons settle on the same tract of land, the right of preëmption shall be in him who made the first settlement, provided such person conforms to the other provision of the law; and all questions as to the right of preëmption arising between different settlers shall be determined by the register and receiver of the district within which the land is situated; and appeals from the decision of district

officers, in cases of contest for the right of preëmption, shall be made to the Commissioner of the General Land Office, whose decision shall be final, unless appeal therefrom be taken to the Secretary of the Interior."

Obviously, here is expressly authorized a contest before the local land officers in respect to preëmption entries. And while the same provision is not found in reference to homestead entries, the rightfulness of such a contest before such a tribunal is recognized in the act of May 14, 1880, c. 89, § 2, 21 Stat. 140, 141, as follows:

" In all cases where any person has contested, paid the land office fees, and procured the cancellation of any preëmption, homestead, or timber-culture entry, he shall be notified by the register of the land office of the district in which such land is situated of such cancellation," etc.

Reënacted substantially in 1892. Act of July 26, 1892, c. 252, 27 Stat. 270. See also act of March 3, 1891, c. 561, § 7, 26 Stat. 1095, 1097, and the recent act of January 11, 1894, § 1. It is evident from these references that, even if there be no statute in terms authorizing a contest before the local land office in respect to homestead entries, the validity of such contest has been again and again expressly recognized by Congress.

Further, we find in the Revised Statutes these sections:

" Sec. 441. The Secretary of the Interior is charged with the supervision of public business relating to the following subjects: . . . Second. The public lands, including mines.

" Sec. 453. The Commissioner of the General Land Office shall perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in anywise respecting such public lands, and, also, such as relate to private claims of land, and the issuing of patents for all [*agents*] [grants] of land under the authority of the government.

" Sec. 2478. The Commissioner of the General Land Office, under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this Title not otherwise specially provided for.

"Sec. 2246.  The register or receiver is authorized, and it shall be their duty, to administer any oath required by law or the instructions of the General Land Office, in connection with the entry or purchase of any tract of the public lands."

General rules of practice have been adopted and promulgated by the Interior Department, which rules of long standing were codified by Commissioner Sparks, and approved by Secretary Lamar, August 13, 1885, and, as so codified, are still the regulations in force.  By these rules of practice express provision is made for a contest before the local land officers in respect to homestead as well as preëmption entries, and for the taking of testimony before such officers, and a regular, formal trial, with the right of appeal to the Commissioner of the General Land Office, and therefrom to the Secretary of the Interior.

We have, therefore, a general grant of authority to the Land Department to prescribe appropriate regulations for the disposition of the public land; a specific act of Congress authorizing contests before the local land offices in cases of preëmption; rules and regulations prescribed by the Land Department for contests in all cases of the disposition of public lands, including both preëmption and homestead entries; and the frequent recognition by acts of Congress of such contests in respect to homestead entries.  Clearly then, within the scope of § 5392, the local land officers in hearing and deciding upon a contest with respect to a homestead entry constituted a competent tribunal, and the contest so pending before them was a case in which the laws of the United States authorized an oath to be administered.

This is not a case in which the violation of a mere regulation of a department is adjudged a crime.  *United States* v. *Bailey*, 9 Pet. 238, is in point.  There was an act of Congress making false testimony in support of a claim against the United States perjury, and the defendant in that case was indicted for making a false affidavit before a justice of the peace of the Commonwealth of Kentucky in support of a claim against the United States.  It was contended that the justice of the peace, an officer of the State, had no authority under the acts of Con-

gress to administer oaths, and that, therefore, perjury could not be laid in respect to a false affidavit before such officer. It appeared, however, that the Secretary of the Treasury had established, as a regulation for the government of his department and its officers in their action upon claims, that affidavits taken before any justice of the peace of any of the States should be received and considered in support of such claims. And upon this the conviction of perjury was sustained, Mr. Justice McLean alone dissenting. It was held that the Secretary had power to establish the regulation, and that the effect of it was to make the false affidavit before the justice of the peace perjury within the scope of the statute, and this notwithstanding the fact that such justice of the peace was not an officer of the United States. Much stronger is the case at bar, for the tribunal was composed of officers of the government of the United States; it was created by the Land Department in pursuance of express authority from the acts of Congress. This perjury was not merely a wrong against that tribunal or a violation of its rules or requirements; the tribunal and the contest only furnished the opportunity and the occasion for the crime, which was a crime defined in and denounced by the statute.

Nor is there anything in the case of *United States* v. *Eaton*, 144 U. S. 677, 688, conflicting with the views herein expressed. In that case the wrong was in the violation of a duty imposed only by a regulation of the Treasury Department. There was an act entitled " An act defining butter; also imposing a tax upon and regulating the manufacture, sale, importation, and exportation of oleomargarine," which contained several sections forbidding particular acts, and imposing penalties for violation thereof. And in addition there was a general provision in section 18 that " if a party shall knowingly, or wilfully, omit, neglect, or refuse to do, or cause to be done, any of the things required by law in the carrying on or conducting of his business, or shall do anything by this act prohibited, . . . he shall pay a penalty," etc. There was authority given to the Commissioner of Internal Revenue to make all needful regulations for carrying into effect the act. In pursuance of that authority the Commissioner required the keep-

ing of a book in a certain form, and the making of a monthly return — matters which were in no way referred to in the various sections of the statute prescribing the duties resting upon the manufacturer or dealer in oleomargarine, although subsequently to this statute, and subsequently to the offence complained of, and on October 1, 1890, Congress passed an act, by section 41 of which wholesale dealers in oleomargarine were required to keep such books and render such returns in relation thereto as the Commissioner of Internal Revenue should require. It was held by this court that the regulation prescribed by the Commissioner of Internal Revenue, under that general grant of authority, was not sufficient to subject one violating it to punishment under section 18. It was said by Mr. Justice Blatchford, speaking for the court:

"It is necessary that a sufficient statutory authority should exist for declaring any act or omission a criminal offence; and we do not think that the statutory authority in the present case is sufficient. If Congress intended to make it an offence for wholesale dealers in oleomargarine to omit to keep books and render returns as required by regulations to be made by the Commissioner of Internal Revenue, it would have done so distinctly, in connection with an enactment such as that above recited, made in section 41 of the act of October 1, 1890.

"Regulations prescribed by the President and by the heads of departments, under authority granted by Congress, may be regulations prescribed by law, so as lawfully to support acts done under them and in accordance with them, and may thus have, in a proper sense, the force of law; but it does not follow that a thing required by them is a thing so required by law as to make the neglect to do the thing a criminal offence in a citizen, where a statute does not distinctly make the neglect in question a criminal offence."

This, it will be observed, is very different from the case at bar, where no violation is charged of any regulation made by the department. All that can be said is that a place and an occasion and an opportunity were provided by the regulations of the department, at which the defendant committed the crime of perjury in violation of section 5392. We have no

doubt that false swearing in a land contest before the local land office in respect to a homestead entry is perjury within the scope of said section.

Some objection is made by counsel to the form of the indictment, in that in its caption there is nothing to show the organization of the court, or who composed it or who were present as constituent parties thereof when the indictment was returned; and nowhere any express recital that it was found by the concurrence of at least twelve jurors; and further, that it was signed by the assistant United States district attorney instead of by the district attorney himself. The record shows that at a term of the District Court the grand jurors of the United States in and for said district came into open court, and, through their foreman, presented the bill of indictment, and that the bill was endorsed "a true bill," with the signature of the foreman immediately thereunder. With reference to all these objections it is enough to refer to section 1025 of the Revised Statutes, as follows:

"No indictment found and presented by a grand jury in any District or Circuit or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

Clearly, there was nothing in any of these matters which tended to the prejudice of the defendant, or rendered it doubtful by what body he was charged with the crime, in what court he was to be tried, or the exact nature of the offence with which he was charged.

Another matter is this: The rules and regulations prescribed by the Interior Department in respect to contests before the Land Office were not formally offered in evidence, and it is claimed that this omission is fatal, and that a verdict should have been instructed for the defendant. But we are of opinion that there was no necessity for a formal introduction in evidence of such rules and regulations. They are matters of which courts of the United States take judicial notice. Questions of a kindred nature have been frequently presented, and

it may be laid down as a general rule, deducible from the cases, that wherever, by the express language of any act of Congress, power is entrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice. Without attempting to notice all the cases bearing upon the general question of judicial notice, we may refer to the following: *United States* v. *Teschmaker*, 22 How. 392, 405; *Romero* v. *United States*, 1 Wall. 721; *Armstrong* v. *United States*, 13 Wall. 154; *Jones* v. *United States*, 137 U. S. 202; *Knight* v. *United States Land Association*, 142 U. S. 161, 169; *Jenkins* v. *Collard*, 145 U. S. 546.

These are all the matters which we deem of importance, and in them appearing no error, the judgment is

*Affirmed.*