## PEART v. CHAZE et al.

(District Court, W. D. Louisiana, Alexandria Division. May 14, 1926.)

No. 1497.

1. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—Recognition by Bureau of War Risk Insurance of the sufficiency of letters from soldier to effect change of beneficiary after his death held valid and effective (Act Sept. 2, 1914, § 402, as added by Act Oct. 6, 1917, § 2 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu]).

Under Act Sept. 2, 1914, § 402, as added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), giving a soldier the right to change beneficiaries, and veterans' Bureau Regulations, § 4137, permitting such change to be made by notice in writing signed by insured, where a soldier, after discharge, but while his insurance was in force, wrote two letters to the department, stating his desire to change beneficiaries and asking that action be taken thereon, which was not done at the time, the action of the bureau after his death, when apparently the letters were first discovered in the files, in recognizing them as sufficient to effect a change of beneficiary, held valid and effective.

2. **Army and navy** ☞51½, New, vol. 12A Key-No. Series.

Where the Treasury Department received and retained a check from a soldier in payment of premiums on his war risk insurance, the legal effect was to continue the insurance for the time paid for, whether or not the check was used.

3. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—Failure to record change of beneficiary of war risk insurance held not to prevent its effectiveness (Act Sept. 2, 1914, § 402, as added by Act Oct. 6, 1917, § 2 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu]).

Under Act Sept. 2, 1914, § 402, as added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), which required the change of beneficiary of war risk insurance to be made "subject to regulations," a regulation that the change should not be effective until received and recorded did not prevent the Veterans' Bureau from recognizing the effectiveness of an application for change of beneficiaries, which was received, but was not recorded, prior to the soldier's death.

4. **Army and navy** ☞51½, New, vol. 12A Key-No. Series—Law and regulations relating to war risk insurance to be liberally construed to carry out wishes of insured.

War risk insurance was in the nature of additional compensation for and recognition of the

services of those men who were called to the country's defense in time of danger, and the law and regulations covering the same should be liberally construed, to the end of giving effect to the wishes and intentions of the men themselves.

At Law. Action by Mrs. Susie G. Peart, tutrix for Elliot Ernest Chaze, against Mrs. Ella Chaze, and the United States. Judgment for defendants.

Peterman, Dear & Peterman, of Alexandria, La., for plaintiff.

Porterie & Bordelon, of Marksville, La., for defendant Chaze.

Philip H. Mecom and Frank O. Chavez, both of Shreveport, La., and John M. George, of Washington, D. C., for the United States and the Veterans' Bureau.

DAWKINS, District Judge. Louis Ernest Chaze was a soldier in the World War, and was honorably discharged from service on September 25, 1919. At his enlistment on May 24, 1918, he took out war risk insurance for the sum of $5,000, naming as his beneficiary Elliot Ernest Chaze, his minor son. While in the service, monthly premiums were deducted from his pay, but after discharge his policy was allowed to lapse, and was not reinstated until November 7, 1920. He was killed on the 25th of the same month in an automobile accident.

On April 11, 1921, Mrs. Ella Chaze, mother of the deceased and grandmother of Elliot Ernest Chaze, beneficiary named in the policy or certificate of insurance, applied to the state court of Avoyelles parish, La., and was appointed tutrix for said minor, alleging that the mother, present plaintiff, had renounced her rights as natural tutrix. The application set forth that the insurance named represented the entire estate of the deceased. She thereafter, as tutrix of the minor, collected the monthly payments of $28.75, until February 29, 1924, or a total of $1,127.

About that date the present plaintiff, Mrs. Peart, mother of the minor, learned that the deceased had carried insurance. She had been divorced from him in March or April, 1918, prior to his enlistment in the army and the taking of the insurance on May 24th of the same year. This, no doubt, accounts for the fact that at that time his said son was made the beneficiary. On July 3, 1919, plaintiff married a second time. Her minor child, Elliot Ernest Chaze, only issue of her marriage with deceased, at all times continued to reside with his mother in the parish of Rapides, in which jurisdiction she also qualified as natural tutrix for her said son, on August 27, 1921. When the plaintiff learned of the existence of the insurance, she notified the Veterans' Bureau of her appointment as tutrix and of the alleged invalidity of the designation of the defendant, Mrs. Ella Chaze, as such, and demanded that payments in the future be made to her. The bureau ceased all payments, and informed the plaintiff that application would have to be made for the revocation of the letters of tutorship to Mrs. Ella Chaze before plaintiff would be recognized.

Some time between the date in February, 1924, when the plaintiff first advised the department of her interest in the matter, and the 9th of May of that year, there was found among the files of the bureau two letters written by the deceased with regard to a change of beneficiary. The first bore date September "31," 1919, and the second was undated, but bore the receiving stamp of the bureau as of December 4, 1919, both of which letters I quote as follows:

"Sept. 31/19.

"To Treasury Dept., Washington, D. C.—— Dear Sirs: Enclosed find check for my insurance for *Oct.* and *Nov.* 1919. My serial No. is 2900611. I was discharged Sept. 24. Was master engineer, Jr. grade. I was insured for Elliot Chaze, my son. I wish to change my beneficiary to my mother, Mrs. Jos. U. Chaze.

"Kindly let me know if I could change my policy to an 20 yr. endowment and what it will cost for $2,000.00.

"Kindly answer at once.

"Yours respectfully,

"[Signed] Lewis Ernest Chaze.

"P. S.—I included 20 cents exchange."

"Marksville, La.

"Treasury Dept., Washington, D. C.: Now this is the second time I write in regards to my policy, which I want to change to a 20 yr. endowment. I sent ck. last month and a letter to that effect. Now kindly answer and send me necessary papers to fill out. I was insured for Elliot Chaze, my son. Now I want to change the beneficiary to my mother, Mrs. Jos. U. Chaze.

"My policy No. is 2422360 and I want some action on this please.

"Kindly attend to this at once.

"Please do.

"Yours respectfully,

"[Signed] L. E. Chaze.

"Serial 2900611.

"Grade—Master engineer.

"Discharged Sept. 26."

After finding these letters, the bureau wrote the attorneys for the defendant Mrs. Ella Chaze, under date of May 9, 1924, advising that it would recognize her as the beneficiary, a portion of which letter I quote as follows:

"You are advised that the mother of this former soldier was designated beneficiary of his insurance prior to his death, and an award will be approved in her favor, following the receipt of form 514, which is inclosed, properly executed by her.

"According to the bureau records, the original beneficiary designated in this case was Elliot E. Chaze, minor son of the insured; but subsequently the insured clearly indicated his desire to have his mother, Mrs. Ella Chaze, receive the benefits of this insurance by requesting a change in two different letters.

"It is believed that the above statement will make it unnecessary to reply to other matters referred to in your recent communication.

"In view of the fact that there is some controversy at present existing between the divorced wife of the insured and the insured's mother, as to who is entitled to benefits in this case, no award will be made until the expiration of 30 days from this letter, in order that they may present any evidence they desire to refute the holding that the letters in question are a proper change of beneficiary, executed by the insured without undue influence and while he was mentally competent to make such a change."

Thereafter the bureau persisted in its decision to pay the installments of insurance to the mother of the deceased, and on November 10, 1924, plaintiff filed this suit, making the government and the mother of deceased, Mrs. Ella Chaze, parties defendant, prayed to be recognized as the lawful tutrix of the minor, Elliot Ernest Chaze, and entitled to receive the proceeds of said insurance for said child as the lawful beneficiary of said policy.

[1] It is the contention of the plaintiff that the policy of insurance was a contract between the government and the deceased, which could only be changed or modified by a strict compliance with its terms, the law, and the regulations of the Treasury Department made pursuant thereto; that the letters relied upon by the department as effecting the change in the beneficiary, when received and recognized as such, were merely expressions of a wish or desire to that end, and never reached the dignity of an application for such change, as contemplated by the statute and regulations thereunder; that, since no lawful change had been made prior to the soldier's death, neither the bureau nor any one else could do anything to defeat or prejudice the vested rights of the minor named as beneficiary; that at the time the said letters were written the policy had lapsed, was no longer in force, and if proper application had been made the same could not have been complied with, because there was no insurance in effect to be changed; and that when the policy was finally reinstated, in November, 1920, it was revived in the same form, with the same terms and conditions which it bore when it lapsed, and which provided for the payment of its benefits to the son, Elliot Ernest Chaze.

The Act of October 6, 1917 (40 Statutes at Large, p. 409), in force when the insurance in this case was originally applied for on May 24, 1918, by section 204, provided:

"Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries, but only within the classes herein provided." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu.

On February 24, 1919, the Treasury Department promulgated what was known as "Treasury Decision No. 41, War Risk Insurance," which is embodied in sections 4137 and 4138 of the Regulations of the United States Veterans' Bureau, reading as follows:

"Sec. 4137. A change of beneficiary to be effective shall be made either (a) by the last will and testament of the insured, or (b) by notice in writing to the United States Veterans' Bureau, signed by the insured or by his duly authorized agent. Whenever practicable such notice shall be given on blanks prescribed by the United States Veterans' Bureau. (T. D. 41, W. R., February 24, 1919, supersedes T. D. 25, W. R.)"

"Sec. 4138. No change of beneficiary shall be effective until the same has been received and recorded in the United States Veterans' Bureau. Payments of installments of insurance shall be made to beneficiaries last of record in the United States Veterans' Bureau until the change of beneficiary has been so received and recorded. (T. D. 41 W. R., February 24, 1919. Supersedes T. D. 25 W. R.)"

It is clear, from these provisions, that the insured had the right to change the beneficiary of his insurance, and the only question to be decided is as to whether that result was legally accomplished by what he did. The main facts of this case are not disputed.

When the first letter was written in September, 1919, his former wife had been remarried on July 3d of that year, and according to the undisputed evidence her son had at all times been living with her, and continued to do so after her second marriage.

It is argued by counsel for the defendant Mrs. Chaze, and this appears to be a reasonable human experience, that after being discharged from the army on September 25, 1919, and returning home to find that his former wife had remarried, the deceased feared that the funds to be paid upon his insurance to his son, in event of his death, would fall into the hands of the second husband, so that promptly, on September "31" (probably September 30th) following, he made the first request that the beneficiary be changed to his mother. Receiving no reply, he again wrote the second letter, which was received by the bureau on December 4th, saying:

"Now, I want to change the beneficiary to my mother, Mrs. Jos. U. Chaze. My policy number is 2422360 and I want some action on this, please. Kindly attend to this at once. Please do."

[2] The first letter stated that he had inclosed check "for my insurance for Oct. and Nov., 1919," and it is not disputed that this was received by the department, although the attorney for the bureau, in his testimony, which was given merely from his examination of the records, says that the policy had lapsed on November 1st, because the insured paid no premiums after his discharge. Granting that the check was received, but not cashed, I think as a matter of law the insurance would have continued, for he received no further advice about it, and the government could not keep his check, take no action, and forfeit his insurance. If he paid for October and November, the policy did not lapse until December 31, 1919, so that I think his insurance was still in effect when these letters were received. Do they meet the reasonable requirements of the statute and the regulations made pursuant thereto, or was it necessary for the government to accept them as a proper application for change of beneficiary, and that the change should have been made and actually entered upon the records, before the soldier's death?

I think it plain that, by the statute quoted above, Congress intended that any soldier insured under its provisions should have the right to change his beneficiary within the prescribed classes at will, but that this should be done according to reasonable rules and regulations, to be prescribed by the Treasury Department, to insure an orderly administration of the law. These regulations, in section 4137, above quoted, provide that changes may be made (a) by last will, and (b) "by notice in writing to the United States Veterans' Bureau, signed by the insured or his duly authorized agent. Whenever practicable, such notice shall be given on blanks prescribed by the United States Veterans' Bureau."

[3] In this instance, the insured gave "notice in writing" twice, "signed" by himself, of the desire to make the change, and the bureau was afforded opportunity to furnish him such forms as it may have prescribed, had it chosen to do so, or, in its discretion, it could have entered the change upon the records. However, it did neither. Is the insured to be deprived of his right to make the change allowed by the statute merely because of the negligence or other inaction of the bureau? I think not. It is true the deceased may have thought that he had not accomplished the change, or that it was necessary for him to sign a formal application therefor, and he perhaps died with the belief that he had not succeeded. However, this is not determinative of the matter. The question is, not what he thought, but did he reasonably comply with the law? And the court should give effect to his purpose and intention, if possible, in the light of what was done.

It is also true that section 4138 of the regulations, above quoted, provides that "no change of beneficiary shall be effective until the same has been received and recorded in the United States Veterans' Bureau"; but the Treasury Department, under its power to make regulations, could not defeat the statute by prescribing such rules, and then fail or refuse itself to comply therewith. Furthermore, the next sentence of this section, I think, clearly indicates that the object was to protect the government against claims of persons under changes of beneficiary until they had been received and recorded, for it is said:

"Payments of installments of insurance shall be made to beneficiaries *last of record* in the United States Veterans' Bureau *until* the change of beneficiary has been so received and recorded."

As an illustration, the first section (clause a) permitted a change by last will, and if such a testament were made on the deathbed, and the will not probated until weeks or perhaps months thereafter, it would, of course, be impossible to receive and record the change before death, and liability under the policy. Yet it appears to be clear-

ly contemplated that a change in beneficiary could be made under such circumstances.

A strong appeal is made by the plaintiff, upon the ground of the necessities of the child, and it is suggested that perhaps, if the father had been furnished with blanks, or if he had known that his letters would be construed as a change of beneficiary, he might have recanted and left the insurance to the son. However, before reinstating his policy, and as late as July 7, 1920, before his death on November 25th of the same year, he had attempted to convert his said insurance (which unfortunately had ceased to exist because of his allowing it to lapse) into an endowment policy, and in the application for that purpose again named his mother, Mrs. Ella Chaze, as the beneficiary. All of this I think clearly indicates a continuing desire that the money should be paid to his mother.

It is clearly the duty of the court to respect the wishes of the dead, if the law has reasonably been complied with. The appeal of the deceased, in his second letter to the department, is almost pathetic: " * * * I want some action on this, please. Kindly attend to this at once. Please do."

In a recent case, Emma White v. U. S. of America and Lucy Reeves, 46 S. Ct. 274, 70 L. Ed. ——, the Supreme Court of the United States had occasion to interpret this statute and the regulations made pursuant thereto. There the policy was in favor of the soldier's mother, and he had not even written the department to make any change; but in a letter, which was later recognized as his last will, he directed that one-half of the insurance should go to an aunt. At the time the letter was written, and at the date of his death, the law did not recognize aunts as among the class who could be made beneficiaries of war risk insurance; but thereafter, by the Act of December 24, 1919, aunts were added to the list. The soldier died on October 4, 1918. The mother claimed the entirety of the insurance, but the right of the aunt to share in the policy was upheld. In passing upon the case the Supreme Court, at its October term, 1925, No. 177, handed down on March 1, 1926, through Mr. Justice Holmes, said:

The certificate of insurance provided in terms that it should be "subject in all respects to the provision of such act (of 1917), of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted, all of which, together with the application for this insurance, and the terms and conditions published under authority of the act, shall constitute the contract." These words must be taken to embrace changes in the law no less than changes in the regulations. The form was established by the Director with the approval of the Secretary of the Treasury and on the authority of article I, par. 1, and article IV, par. 402, of the act, * * * which, we have no doubt, authorized it. The language is very broad and does not need precise discussion when the nature of the plan is remembered. The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it, and the relation of the government to them, if not paternal, was at least avuncular. It was a relation of benevolence established by the government at considerable cost to itself for the soldier's good. It was a new experiment, in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will. If the soldier was willing to put himself into the government's hands to that extent no one else could complain. The only relations of contract were between the government and him. White's mother's interest at his death was vested only so far as he and the government had made it so, and was subject to any conditions upon which they might agree. They did agree to terms that cut her rights down to one-half. She is a volunteer and she cannot claim more."

"See Helmholz v. United States (C. C. A.) 294 F. 417, affirming 283 F. 600; Gilman v. United States (C. C. A.) 294 F. 422, affirming (D. C.) 290 F. 614.

Again, in the case of Claffy v. Forbes, Director of the Bureau of War Risk Insurance, 280 F. 234, the District Court for the Western District of Washington had under consideration a case where the insured, at the time of his death, held insurance amounting to $10,000, with his mother as the recorded beneficiary. He was killed in battle on September 26, 1918, but on the 15th day of July preceding had written his mother and father a letter, in which, among other things, he had said: * * * I have also made out a $10,000 life insurance to you. If I should be killed it will be paid to you, $57.50 a month for 20 years, and I wish; if you should not live to get it all, that you make it so that Agnes would get it." Agnes was his niece. The mother died thereafter, leaving a will in which she bequeated the insurance to the said niece of the soldier. Her executor made demand on the bureau for payment of this insurance for the benefit of the legatee, but it was refused by the bureau,

and in passing upon a motion to dismiss, the court said:

"The insurance policy is a contract between the insured and the Bureau of War Risk Insurance within the limitations of the War Risk Insurance Act (Comp. St. § 514a et seq.), and the regulations promulgated by the Bureau of War Risk Insurance, such regulations having the force of law (U. S. v. Birdsall, 233 U. S. 231, 34 S. Ct. 512, 58 L. Ed. 930; U. S. v. Grimaud, 220 U. S. 506, 31 S. Ct. 480, 55 L. Ed. 563), and the court judicially knows of the regulations by a department of the United States government (Caha v. U. S., 152 U. S. 211, 14 S. Ct. 513, 38 L. Ed. 415). The purpose of insurance, as expressed in the act (section 400), is to give greater protection to the soldiers and sailors and their dependents; for this protection the insured pays a stipulated compensation, based upon the American Experience Table of Mortality, and interest at $3\frac{1}{2}$ per cent. per annum (section 402), and the beneficiaries are limited to spouse, child, grandchild, parent, brother, or sister (section 402), uncles, aunts, nephews, and nieces (Bulletin No. 1). The insurance shall be payable only to the beneficiary (section 21, Act June 25, 1918, 40 Stat. 609, 615), and is exempted from taxation and debts, and is nonassignable (section 2, supra, as section 28 added to article 1, October 6, 1917, 40 Stat. 402).

"The insured may change the beneficiary in writing, signed by the insured, and witnessed by one person. Regulation 14, dated March 20, 1918. By amendment of this regulation, dated February 24, 1919, the change may be made 'by notice in writing to the Bureau of War Risk Insurance, signed by the insured, or by his duly authorized agent,' the change to be effective when received and recorded in the War Risk Insurance Bureau. Under the regulations of February 24, 1919, if the insured had written to the bureau, supra that upon the death of his mother, the beneficiary, to pay the unpaid installments to the niece, such designation would undoubtedly have been sufficient, and if the mother during her lifetime had notified the bureau, supra, in writing, pursuant to the provisions of the letter, that upon her death the unpaid installments should be paid to the niece, the designation would have sufficed. The intent to designate the niece as residuary beneficiary is explicitly established. Does the fact that the designation was by misapprehension of the laws sent to the mother, instead of the bureau, defeat the soldier's intent and right granted him under the insurance contract and law?

13 F.(2d)—58

"This inquiry must be answered in the negative. Is the designation made in harmony with the regulations at the time it was received by the bureau sufficient? Yes. The only purpose of the regulations, having relation to change of beneficiary, is to enlarge the right of the insured, and to protect the insurer. To hold the designation in the letter sufficient does not change the liability of the insurer, and is within the privilege granted the insured. The brothers and sisters of the deceased soldier have no right, except that of blood relationship, and all right is determined against them by the expressed designation by the deceased in harmony with the regulations at the time it was presented. The execution and receipt of designation must be taken together. It takes both to conclude the issue, and form, formality, and legal technicality must give way to common sense and remedial justice, when all doubt is removed as to the intent of the deceased soldier; and when the purpose of the law has been complied with, there should be no hesitancy in carrying out the express wish of such deceased. The letter is a designation signed by the insured and the fact that it was sent to the mother to make the final designation, in the event of her death, instead of being sent to the bureau for record, should not defeat it.

"All that is necessary is that the real wish and purpose of the soldier, who exposed his life in the army for the safety of the government, should sufficiently appear (notes, Cooper's Justinian, p. 496, R. E., Gifts Inter Vivos, Jaen-Marie Ricard, printed in Paris in 1754, p. 332); nor is it vital that notice of designation should be received by the bureau prior to the death of the insured. The regulations of February 24, 1919 (paragraph 3), provide for such a contingency: 'Before notice of such designation has been received and recorded by the bureau, payment shall be made to those entitled according to the laws of intestacy, as provided in section 402 of the War Risk Insurance Act.'

"Throughout the history of the civilized world, since the decrees of Julius Cæsar, the intention and wish of the soldier, with relation to designation of beneficiary or disposition of property, killed in the line of duty, has been carried out when ascertained, whether it was scrawled in the sand with the point of his sword, or written on the scabbard of his sword or his shield (The Customs of Duchy of Burgundy, printed at Dijon, 1694, p. 410; Coutumes de Paris, column 51, Paris, 1714); and remedial justice requires, under the facts in this case, that the

designation of the niece in the letter to the mother be established from the date of presentation to and record thereof by the Bureau of War Risk Insurance."

I also quote the syllabus of Farley v. U. S. et al., by the District Court of the United States for the District of Oregon, reported in 291 F. 238, as follows:

"Generally the prescribed regulations must be substantially complied with before a change of beneficiaries is effected, but where insured has pursued the course prescribed, and has done all that he can possibly do to change the beneficiary, and a. sufficient time has elapsed for the change to have become effective in the usual course of business before his death, a court of equity will consider that done which ought to have been done.

"A soldier having war risk insurance payable to designated beneficiaries, on his marriage procured the required blank forms for having his wife substituted as beneficiary. These he filled out and took to the proper officer, who made certain changes and corrections in pencil and then attached them to blank forms, which by his direction the soldier signed in his presence, and which the officer retained for the purpose of having them filled out in typewriting, as customary, and then disposed of as required by the regulations. After the soldier's death these forms could not be found, and apparently nothing further had been done with them; but eventually the bureau recognized the widow as the beneficiary. Held that, the soldier having done all that was required by his officers to effect the change of beneficiary, it was properly given effect.

"The provision of the regulations of the War Risk Insurance Bureau that no change of beneficiary shall be valid unless and until it is recorded in the bureau is for the protection of the government, and may be waived by it."

[4] I agree with the logic and justice of the decisions above quoted from. War risk insurance was in the nature of additional compensation and recognition of the services of those men who were called to the country's defense in time of danger, and I believe that the law and regulations covering the same should be liberally construed, to the end of giving effect to the wishes and intentions of the men themselves. Such an arrangement cannot be governed by the strict rules applicable to ordinary insurance, and, as pointed out by Justice Holmes, the statute was so worded as to allow the widest latitude for change and amendment to meet contingencies which might arise under this rather unusual experiment of government.

My conclusion is that the demands of the plaintiff should be rejected, and that the mother of the deceased, Mrs. Ella Chaze, should be recognized as the true beneficiary of this insurance. Rulings will be made upon the special requests for findings of fact and law at the sitting of this court at Alexandria on the second Monday in June, and a proper decree in accordance with these conclusions may then be presented for signing.