## New York Central Railroad Company, Appellant, v. James B. Berry Sons' Company.

Argued March 19, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*A. R. Osmer,* with him *N. F. Osmer* and *Kenneth F. Stone,* for appellant.

*J. V. Frampton,* with him *J. H. Courtney,* for appellee.

OPINION BY MR. JUSTICE LINN, April 15, 1940:

Plaintiff appeals from judgment on a verdict for defendant in a suit to recover freight and demurrage charges. Defendant concedes[1] that it made the ship-

---

[1] Counsel for both parties, to avoid taking depositions in Texas, signed and put into the record a stipulation of facts, among them: "1. That the several tank cars designated in Exhibits 1 to 32 [2 cars were eliminated by amendment] . . . contained crude oil in the quantities and amounts specified in said Exhibits and were in fact delivered at the times and places therein indicated, by the defendant to the Texas Mexican Railway Company, consigned by said defendant for transportation and delivery to the Simrall Refining Corporation at Amherstburg, Ontario, Canada."

ments; they were transported via the routes specified and were delivered to the consignee at destination. Briefly stated, the first defense, so far as we have been able to understand it, is that plaintiff has not put in evidence enough of the tariffs on file with the Interstate Commerce Commission to support a calculation of the freight charges due; another defense is that defendant was discharged from the obligation to pay the freight by plaintiff's delivery at destination without first collecting the charges from the consignee.

1. The freight accrued by the applicable tariffs for transportation from points in Texas to a destination in Canada, described in the evidence as "probably 28 or 30 miles" beyond the United States boundary line. The statement of claim identified each car and averred that the freight rate over that portion of the specified route west of the Mississippi River was 29 cents per hundredweight and 24 cents on the lines east of the river. It also claimed for "a surcharge of six percentum upon said rates, representing and being the difference in exchange of currency between the United States and Canada, then existing, in addition; and also to such demurrage and reconsignment charges as become necessary in the course of said transportation and deliveries, under and by virtue of the terms and conditions of said several shipping orders, and the government rules and regulations applicable thereto, including Canadian Car Demurrage Rules, authorized by the Board of Railroad Commissioners for Canada, C. R. C. No. 4 and I. C. C. No. 2 effective November 5, 1921." The additional sum thus claimed was $619.79, of which $64.00 was a demurrage charge on 11 cars for specified periods.

The rule that we must apply was concisely stated in *L. & N. Railroad v. Central Iron & Coal Co.,* 265 U. S. 59, at page 65: "The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by ap-

plying this tariff rate to the actual weight. Thus, they were fixed by law. . . ."[2]

Though the defendant admitted that the cars contained crude oil in the quantities and amounts specified in its shipping orders and that the cars were delivered and that the tariff rates were as stated, it contends that (in the words of its brief) "The freight charges on each car could not be determined without application of the several pound weight factors applicable to the transportation west of said River and to the transportation east thereof to first determine the weights for each movement to which the rates per hundred pounds respectively applicable west and east of the River could be applied." It is a fact, well understood by persons engaged in crude oil transportation in tank cars, as appears in *Western Petroleum Refiners Association v. St. Louis-San Francisco Ry. et al.*, 83 I. C. C. 702, 703, that "The estimated weights per car are arrived at by multiplying the gallonage in the tank and dome at the time of loading by the estimated weight per gallon specified in the classification. This estimate per gallon is 6.6 pounds except in western classification territory where the estimated weight per gallon of crude fuel and gas oils is 7.4 pounds. It is admitted in the record by all parties that these estimates of weights per gallon are proper." See also *Western Petroleum Refiners Association v. St. Louis-San Francisco Ry.*, 140 I. C. C. 489. Appellee, in its reply brief, notes that plaintiff's witness, in computing the freight charges pursuant to the tariffs, did "not present nor offer any Classification which establishes such weight and does not so much as state the weight in pounds per gallon from East Ft. Madison [boundary between eastern and western classification] to destination, let alone present or offer any Classification to establish such weight."

We think the record, as the following references to

---

[2] *C. B. & Q. R. R. v. Berry's Sons*, 86 Pa. Superior Ct. 1.

it show, was sufficient to compute the amount of the freight due as matter of law.[3]  Paragraphs 5, 6 and 7 of the statement of claim contain the averments of the shipment of the cars with dates, car initial, number and weight of contents both west of the river and east of the river according to the formula referred to in the quotation just made from the opinion of the commission. Defendant then had complete notice of the weights on which the freight charges were calculated.  The 10th paragraph of the statement was as follows: "The said deliveries of each and every of said cars mentioned in paragraphs 5, 6 and 7 were made by The New York Central Railroad Company, lessee of the said Michigan Central Railroad Company to the said consignee, the Simrall Refining Corporation of Amherstburg, Ontaria, Canada."  To that paragraph, the defendant answered in its affidavit of defense: "10. The defendant denies the averments of paragraph 10 of the Statement of Claim as therein stated.  The deliveries of each and every of said cars mentioned in paragraphs 5, 6, and 7 of the Statement of Claim were made under the contracts of carriage between the defendant and The Texas Mexican Railway Company with and by means of the facilities of connecting carriers."  It is to be observed that the admission is "The deliveries of each and every of said cars mentioned in paragraphs 5, 6, and 7 of the Statement of Claim" were made under the contracts which

---

[3] These rates are part of the federal law administered by the court trying the case.  The physical production of any tariff was only necessary if the judge wished to be advised of the rate or regulation prescribed just as he might look at the pamphlet laws or an Act of Congress to ascertain the provisions of a statute.  In *Sullivan v. U. S. S. Board, etc.,* 76 Pa. Superior Ct. 30, 36, KELLER, J., said: "In the present case, the Workmen's Compensation Board and the court are bound to take judicial notice of acts of Congress and executive orders and regulations authorized by acts of Congress which have the force of statutes: *Caha v. United States,* 152 U. S. 211; as well as general acts of assembly affecting the defendant."  See 4 Wigmore, Evidence, sections 2572, 2573 (1905).

are in suit. Defendant's shipping orders specified the number of gallons with the weight west of the river from which the weight east of the river can be calculated by the formula mentioned. Paragraphs 10 of the statement and of the affidavit of defense were read in evidence at the trial. Considering these facts with the stipulation of counsel, that the "crude oil in the quantities and the amounts specified", were shipped by defendant, the court must hold that the weights sufficiently appear to have applied to them the freight rates required by law. Nothing but simple arithmetical calculation is needed to determine the total liability. Furthermore, it is unnecessary to consider the general denial of the averments in paragraphs 5, 6 and 7 of the statement of claim made in the amendment to the affidavit of defense during the course of the trial, not only because it was inconsistent with defendant's stipulation concerning the shipping orders which stated the contents of the cars in gallons but also because as a pleading the amendment failed as not sufficiently specific: *Fulton Farmers' Assn. v. Bomberger*, 262 Pa. 43, 104 A. 805. The jury should have been instructed that the plaintiff was entitled to recover the freight charges so to be calculated and the failure to give that instruction is an error that this court must now correct.

2. The plaintiff put in evidence a tariff prescribing the rate of exchange, described as follows by a witness: "The 6 per cent surcharge is found in Plaintiff's Exhibit No. 69, Canadian Freight Association Tariff 16-C, and arrived at in accordance with the provisions of that tariff, which states that a surcharge of sixty [?] per cent of the rate of exchange, when such rate is over one per cent, will be added to the total through freight charges when such charges are payable and collected in Canada. This tariff also provides that on shipments to Canada, the surcharge must be collected at the rate governing on the date of advice note of arrival at the Canadian destination. It also provides that the sur-

charge must be assessed in all cases where charges are collected at points in Canada, whether paid in Canadian or United States currency." This was followed by his evidence of the delivery of each car with the computation of the freight charges at the tariff rates to which he added a surcharge of 6% pursuant to the tariff mentioned, and demurrage charges for the detained cars.

The rate of exchange on the date of the advice notice of arrival and the various periods of detention are questions of fact which, having been challenged, are for the jury, and, as the jury found for defendant the verdict must be taken to mean that the facts were found not to be as contended for by the plaintiff.

3. The consignee was on plaintiff's credit list and, before paying, became bankrupt. Section 7 of the shipping order, signed by defendant's agent, provided that "The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges. . . ." The defendant consignor elected not to require the plaintiff to collect the freight charges on delivery, and, having so rejected the benefit of the offered exception, became liable, as consignor, "for the freight and all other lawful charges".

Defendant contends that even though, by its shipping orders, it had become liable for the freight, it was nevertheless discharged from liability because plaintiff delivered the cars to the consignee on what defendant contends was an unreasonable credit period. There is evidence that the regulations concerning delivery on credit in Canada differ from those in effect on this side of the boundary. We all agree that the defense must

be rejected in view of the specific provision in defendant's shipping contract by which, as has already appeared, the consignor agreed to be liable to the carrier for the freight.

The judgment is reversed and the record is remitted with instructions to enter judgment for the plaintiff for the amount of the freight charges declared on, $9,569.08, with interest from November 3, 1932.