**UNITED STATES of America, Plaintiff,**

v.

**Chijioke Victor OKORO, et al., Defendants.**

**No. Criminal Case H–01–399.**

United States District Court, S.D. Texas.

June 4, 2002.

Amy Lecocq, Assistant United States Attorney, Houston, TX, for Plaintiff.

Richard Haynes, Paul Coselli, Houston, TX, for Okoro.

Robert Fickman, Houston, TX, for Akpan.

Opinion

HUGHES, District Judge.

Chijioke Victor Okoro and Ernest Akpan move to dismiss the indictment because it lists the wrong United States Attorney above the signature of the assistant United States Attorney. Their motions will be denied.

### 1. Background.

A new United States Attorney for the Southern District of Texas was sworn in May 31, 2001—the day the bill of indictment against Okoro, Akpan, and three other individuals was presented to the grand jury and returned. The indictment was signed by an assistant United States Attorney below the typed name of the United States Attorney who had left office that day.

The defendants say that the indictment is defective because it identifies the former United States Attorney instead of the new one. They want the indictment to be signed on behalf of the government by the United States Attorney—here the new person.

The government argues that the rules of criminal procedure require only that the indictment be signed by *an* attorney for the government; this would include an assistant United States Attorney.

### 2. Law.

The United States Constitution guarantees that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on ... indictment of a Grand Jury." U.S. Const. amend. V. The grand jury is a safeguard between the executive and the accused, endorsing just prosecutions and precluding unfounded ones. The process usually begins with the government presenting a written accusation—a bill of indictment—to the grand jury. 4 William Blackstone, Commentaries *302. If the grand jury determines that probable cause exists, it will endorse the indictment that it is a "true" bill. This endorsement allows the government to prosecute the people named in the indictment.

At common law, the indictment was presumed valid when the grand jury voted it a "true" bill, the foreman signed it, and it was filed in court. The government attorney was not required to sign. *See, e.g., In*

*re Lane*, 135 U.S. 443, 449, 10 S.Ct. 760, 34 L.Ed. 219 (1890).

Since 1946 under the federal rules, the government must sign the indictment before the prosecution can begin. The rules say that the indictment shall be signed by the attorney for the government, including a United States Attorney or authorized assistants. Fed.R.Crim.P. 7(c)(1), 54(c).

Some states require that the attorney for the government—or a designated assistant—sign the indictment; some do not. *Compare* R.I.Super. R.Crim. P. 7(c) *with* Tex.Crim. Pro.Code Ann. §§ 20.20, 21.02. At least one state does not require—but suggests through its sample indictment—that the attorney for the government sign. Ohio Crim. R. 7(B); Ohio Rev.Code Ann. § 2941.06.

### 3. Sequence.

The Constitution and the rules do not specify when the attorney for the United States must sign the indictment. The government may sign the indictment before it is presented to the grand jury or after the grand jury votes a true bill. The timing of a required signature could be deduced from the purpose of the rule requiring it, but no purpose is expressed or may be reasonably deduced.

Again, looking to state practice, some of them specify that the attorney for the government shall sign the bill of indictment before presenting it, but most are silent on the timing. *Compare* Tenn.Code Ann. § 40–13–103 *with* W. Va. R.Crim. P. 7.

At common law, the bill of indictment was presented to the grand jury by a private party to the Crown. The bill's nature—being a written accusation—implies a signature of the accuser. In this analysis, the signature would come first.

Some courts have suggested that a bill of indictment signed before the grand jury votes may unduly influence the grand jury. *See, e.g., United States v. Singer,* 660 F.2d 1295, 1302 (8th Cir.1981). This is nonsense. The government's influence is already readily apparent and nearly dominant: he is the only lawyer present, he explains the charges, and chooses the facts and the witnesses to present for the most part.

The government attorney's decision to sign the bill of indictment before presenting it to the grand jury does not increase his influence or undermine the grand jury's independence. If anything, it could give the grand jury confidence that the charges have been properly described and that it may reliably act now if the government actually took pride in its paperwork.

### 4. *Meaning.*

The government attorney's signature indicates that the government approves of the criminal charges. It also commits the government in representing to the court that the indictment is authentic.

The signature is not a commitment to prosecute. Even after the government signs the true bill, it can move to dismiss or let the speedy trial deadlines expire. Fed. R.Crim. Proc. 48(a). Thus, the rule requiring a signature is merely a formal requirement; it cannot make the government act.

■ The signature requirement might benefit the government by giving it an extra opportunity to stop the process of spontaneous grand jury acts. It may choose to short circuit a grand jury's true bill: if the government attorney refuses to sign the bill, there is no valid indictment. *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.1965).

### 5. *Analysis.*

■ Here the indictment was signed by the assistant United States Attorney who presented the facts in the bill of indictment to the grand jury and who is prosecuting the case. It not only makes sense that the government attorney who presented the bill—and who may prosecute the case—should sign it, but the rule allows an assistant to do it. There would be less accountability should the United States Attorney—who does not ordinarily prosecute cases—sign indictments drafted by unidentified assistants.

It is unclear whether the new United States Attorney was sworn in before or after the indictment was returned. What is clear is that the assistant United States Attorney had authority to sign the indictment on the government's behalf. *Caha v. United States,* 152 U.S. 211, 221, 14 S.Ct. 513, 38 L.Ed. 415 (1894); Fed.R.Crim.P. 54(c). Everything indicates that either the former or new United States Attorney—or both—authorized her to present the bill of indictment. Her signature alone is enough.

### 6. *Conclusion.*

Chijioke Victor Okoro and Ernest Akpan's motions to dismiss the indictment will be denied.